In re the Parental Responsibilities of L.S., Child,

and

Concerning, Tatanjia Willyard Spotanski McNamara, Petitioner

and

Stacy Joe Spotanski, Respondent.

No. 09SC989.

Supreme Court of Colorado,
En Banc.

June 27, 2011.

Rehearing Denied Aug. 15, 2011.*

The Viorst Law Offices, P.C., Anthony Viorst, Denver, Colorado, Attorneys for Petitioner.

William E. Zimsky, P.C., William E. Zimsky, Durango, Colorado, Attorneys for Respondent.

Chief Justice BENDER delivered the Opinion of the Court.

## I. Introduction

This case concerns a child custody dispute between a divorced mother and father. The child currently lives in Colorado with her mother, Tatanjia Willyard Spotanski McNamara. The father, Stacy Joe Spotanski, lives in Nebraska. Seeking to gain custody of his daughter, the father filed a custody action in Nebraska. Although the mother objected to Nebraska's exercise of jurisdiction, a Nebraska district court entered an initial child custody determination awarding custody to the father. Subsequently, the mother filed her own custody action in Colorado. A Colorado district court awarded custody to the mother, refusing to enforce the prior Nebraska custody determination on the basis that Nebraska did not have jurisdiction. Reversing the district court, the Colorado Court of Appeals

* Justice Martinez, Justice Coates and Justice Márquez would grant the Petition.

held that, although Nebraska did not have jurisdiction over the custody determination, Colorado must nevertheless accord that determination full faith and credit. *In re L.S.*, 226 P.3d 1227, 1234 (Colo.App.2009).

This interstate child custody dispute requires us to determine whether Colorado is obligated to recognize and enforce the prior child custody determination rendered by the Nebraska court. To reach this determination, we focus on the Parental Kidnaping Prevention Act of 1980, 28 U.S.C. § 1738A (2010) (PKPA), which extends the requirements of the Full Faith and Credit Clause to custody determinations and, thereby, furnishes a rule of decision for courts to use in adjudicating interstate custody disputes. We conclude that, because Nebraska failed to exercise jurisdiction in accordance with the requirements of the PKPA, the PKPA does not require Colorado to give full faith and credit to the Nebraska custody determination. Hence, we hold that Colorado does not have to enforce the Nebraska custody determination.

Consequently, we reverse the judgment of the court of appeals and remand the case to that court to return the case to the trial court for proceedings consistent with this opinion.

## II. Facts and Procedural History

The child who is the subject of this case was born in 2001 and resided in Colorado with her mother and father beginning in August 2003. The parties separated in January 2004, and the father moved to Nebraska. In May 2004, the mother and father signed a written agreement, which stated that all custody matters would be under Colorado jurisdiction, that the child would continue to live in Colorado with her mother, and that the father would be allowed visitation rights.

In the summer of 2004, the father took the child to Nebraska for an agreed-upon visit. At the conclusion of the visit, the father refused to return the child to Colorado. In November 2004, the father filed in the district court for Howard County, Nebraska an action for dissolution of marriage and asked to be awarded custody of the child. In a pro se answer to the dissolution action, the mother alleged that the child had resided in Colorado for almost two years and that she was supposed to visit her father in Nebraska for no more than three months, "not to establish residency for a court action." The next month, the mother filed a pro se dissolution action in the district court for Adams County, Colorado. She then filed in the Nebraska district court a motion to dismiss the Nebraska dissolution action based on the pending dissolution action in Colorado. Meanwhile, in the Adams County district court action, after a January 2005 hearing in which the mother appeared pro se, the district court issued a minute order dismissing the dissolution action. By way of explanation, the district court's minute order stated only that "the State of Nebraska has jurisdiction over the matter." It made no reference to child custody.

After that, in February 2005, the Nebraska district court, following a hearing in which both parties were represented by counsel, awarded temporary custody to the mother and ordered the father to return the child to the mother in Colorado. On September 21, 2006, the Nebraska district court issued a final decree, dissolving the marriage and awarding custody of the child to the father. The decree stated that the court had jurisdiction, but it only made findings regarding jurisdiction over the dissolution action and failed to find whether the court had jurisdiction over the custody determination or whether Nebraska is the child's home state.

The mother appealed the custody determination to the Nebraska Court of Appeals, but that court dismissed the mother's appeal on procedural grounds. Then, the mother filed a motion to dismiss in the Nebraska district court, contending that Nebraska was not the child's home state and, thus, did not have jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). At a hearing on the motion to dismiss, the father testified that the child had only been living in Nebraska for five months and four days when he commenced the child custody action, which is an insufficient amount of time to establish home state jurisdiction under the UCCJEA. In an order issued April 13, 2007, the Nebraska district court acknowledged that the child had not

been living in Nebraska for six months prior to the father's commencement of the child custody action and, therefore, that it "may have asserted jurisdiction based on facts that were not presented accurately and/or facts that were not presented at all." Nevertheless, citing the minute order of the Adams County district court, the Nebraska district court concluded that Nebraska properly exercised jurisdiction based on the fact that the child's home state, Colorado, had declined to exercise jurisdiction. The mother appealed, and the Nebraska Court of Appeals again dismissed the mother's appeal on procedural grounds.

In October 2006, the mother filed a second dissolution action in the district court for La Plata County, Colorado. The court converted the action into a custody proceeding. After a hearing on December 7, 2006, the La Plata County district court held, in a minute order, that Colorado, not Nebraska, had jurisdiction under the UCCJEA as the child's home state and, therefore, refused to enforce the Nebraska custody determination. Later, after a permanent orders hearing on July 31, 2008, the district court granted custody to the mother, ordered that the father may not remove the child from Colorado without the mother's express written consent, and limited the father to supervised visitations so that he could not remove the child outside the state.

The father appealed to the Colorado Court of Appeals, and that court reversed. The court of appeals determined that, when the father commenced the custody proceeding, Colorado was the child's home state under the UCCJEA and, therefore, Nebraska did not have jurisdiction. *L.S.*, 226 P.3d at 1232. However, the court of appeals concluded that, even though Nebraska did not have jurisdiction over the custody action, Colorado must nevertheless accord the Nebraska custody determination full faith and credit. *Id.* at 1234. It applied the "general rule" that "a judgment is entitled to full faith and credit . . . when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment.'" *Id.* (quoting *Durfee v. Duke*, 375 U.S. 106, 111, 84 S.Ct. 242, 11 L.Ed.2d 186

(1963)). It reasoned that the Nebraska determination was entitled to full faith and credit because the issue of jurisdiction was fully and fairly litigated and the Nebraska court based its ruling "on a legal ground allowed by the PKPA and UCCJEA"—that Colorado, the child's home state, declined jurisdiction—even if the Nebraska court's jurisdictional ruling was factually erroneous. *Id.* The court of appeals remanded the case to the trial court with instructions to communicate its view of jurisdiction to Nebraska under a provision of the UCCJEA that allows such communications in custody disputes. *Id.* at 1235. The mother now appeals.

Currently, the child lives with the mother in Colorado, and the mother refuses to comply with the Nebraska district court order awarding custody to the father. Because the mother refuses to comply with its order, the Nebraska district court issued a warrant for the mother's arrest in May 2008. The warrant orders law enforcement to take physical custody of the child and return the child to the father.

### III. Analysis

#### A. Summary

This case involves competing custody determinations entered by Colorado and Nebraska. Nebraska first exercised jurisdiction over this matter and first entered a custody determination. Therefore, the PKPA—a federal law which dictates whether a state must give full faith and credit to a custody determination entered by a court of a sister state—and Colorado law require us to inquire whether Colorado must recognize and enforce the Nebraska custody determination, not whether Colorado may exercise jurisdiction over this matter. *People ex rel. A.J.C.*, 88 P.3d 599, 611 (Colo.2004).

The mother argues that the Nebraska court failed to exercise jurisdiction in accordance with the PKPA, and, therefore, the court of appeals erred when it held that Colorado must enforce the Nebraska determination. The father argues that the court of appeals correctly held that the Nebraska district court's exercise of jurisdiction com-

plied with the PKPA, and, consequently, the PKPA obligates Colorado to enforce the Nebraska custody determination.

Parallel federal and state statutes—the PKPA (28 U.S.C. § 1738A) and the UCCJEA, a uniform state law adopted by both Colorado (§§ 14–13–101 to –403, C.R.S. (2010)) and Nebraska (Neb.Rev.Stat. §§ 43–1226 to –1266 (2010))—govern whether Nebraska had jurisdiction to enter an initial child custody determination and whether Colorado must enforce that determination. To untangle these applicable laws, we first discuss the PKPA, which, by imposing rules for a state's exercise of jurisdiction over child custody matters, dictates whether a state must enforce a child custody determination entered by the court of a sister state. We also discuss Colorado statutes and case law, which incorporate the requirements of the PKPA.

We then consider whether Nebraska exercised jurisdiction in accordance with the PKPA. This inquiry requires us to determine whether Nebraska exercised jurisdiction in accordance with both its own law and the jurisdictional provisions of the PKPA. We conclude that Nebraska did not have jurisdiction, under either its own law or the PKPA, to enter an initial child custody determination in this case. Consequently, the PKPA and parallel Colorado law do not require Colorado to recognize or enforce the Nebraska determination.

### B. The Applicability of the PKPA and Colorado Law to Resolve This Dispute

■ Whether a trial court has jurisdiction over a child custody proceeding presents a question of law, which we review de novo. *In re Marriage of Pritchett*, 80 P.3d 918, 920 (Colo.App.2003).

Because inconsistent and conflicting state laws produced widespread jurisdictional deadlocks and facilitated an epidemic of interstate parental kidnapping, Congress enacted the PKPA, which established a national standard for the resolution of interstate child custody jurisdictional disputes. Pub.L. No. 96–611 § 7(a); *see Thompson v. Thompson*, 484 U.S. 174, 180, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988). By enacting the PKPA as an addendum to the full faith and credit statute, 28 U.S.C. § 1738, Congress signaled that its "chief aim in enacting the PKPA was to extend the requirements of the Full Faith and Credit Clause to custody determinations." *Thompson*, 484 U.S. at 183, 108 S.Ct. 513; *see also A.J.C.*, 88 P.3d at 611 ("[T]he [PKPA] affirmatively implemented full faith and credit requirements applicable to all custody determinations.").

Like the Full Faith and Credit Clause, the PKPA "prescribes a rule by which courts, Federal and State, are to be guided when a question arises in the progress of a pending suit as to the faith and credit to be given by the court to the ... judicial proceedings of [another] State." *Thompson*, 484 U.S. at 182–83, 108 S.Ct. 513 (citation omitted). Therefore, the PKPA, by virtue of full faith and credit, "furnish[es] a rule of decision for [state and federal] courts to use in adjudicating custody disputes" and, hence, dictates the outcome of jurisdictional conflicts between state courts in child custody determinations. *Id.* at 183, 108 S.Ct. 513.

The PKPA acts as a rule of determination in interstate custody disputes by "impos[ing] a duty on the States to enforce a child custody determination entered by a court of a sister State if the determination is consistent with the provisions of the Act." *Id.* at 175–76, 108 S.Ct. 513. The PKPA mandates that when a state enters an initial custody determination, a second state must enforce that determination provided that the state made the determination in compliance with the PKPA. *Id.*; 28 U.S.C. § 1738A(a). Section 1738A(a) states:

The appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided in [this Act], any custody determination ... made consistently with the provisions of this section by a court of another State.

In *Thompson*, the United States Supreme Court interpreted this provision to mandate that "[o]nce a State exercises jurisdiction *consistently with the provisions of the [PKPA]*, no other State may exercise concurrent jurisdiction over the custody dispute ...

and all States must accord full faith and credit to the first State's ensuing custody decree." 484 U.S. at 177, 108 S.Ct. 513 (emphasis added).

Conversely, if a state court's custody determination fails to conform to the PKPA's requirements, then the custody determination is not entitled to full faith and credit enforcement in another state. *See id.* at 176–77, 108 S.Ct. 513. Both the legislative scheme of the PKPA and *Thompson* confirm this conclusion. First, the PKPA specifically conditions interstate enforcement of a custody determination on the determination having been *"made consistently* with the provisions of [the PKPA] by a court of another State." 28 U.S.C. § 1738A(a) (emphasis added); *see also id.* at (c)-(e), (g). Subsections (c) through (e) and (g) of the PKPA set out the requirements a state must comply with in order to make a custody determination consistent with the PKPA. These subsections provide in relevant part:

(c) A child custody ... determination made by a court of a State is consistent with the provisions of this section *only if*—

. . . .

(d) The jurisdiction of a court of a State which has made a child custody ... determination consistently with the provisions of this section continues *as long as* the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant.

(e) Before a child custody ... determination is made, reasonable notice and opportunity to be heard *shall be given* to the contestants....

. . . .

(g) A court of a State *shall not* exercise jurisdiction in any proceeding for a custody ... determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody ... determination.

28 U.S.C. § 1738A(c)-(e), (g) (emphasis added). By using mandatory language to set out its enforcement and jurisdictional requirements, the PKPA requires full compliance with its provisions and makes no concessions for substantial or partial compliance. *See id.* at (a), (c)-(e), (g) (using mandatory, rather than permissive, language).

Second, in *Thompson,* the Supreme Court stressed that "[t]he sponsors and supporters of the [PKPA] continually indicated that the purpose of the PKPA was to provide for nationwide enforcement of custody orders *made in accordance with [its terms].*" 484 U.S. at 181, 108 S.Ct. 513 (emphasis added); *accord A.J.C.,* 88 P.3d at 611; *Esser v. Roach,* 829 F.Supp. 171, 176 (E.D.Va.1993) (deciding that "[t]he PKPA preempts state law to the extent that only those foreign custody decrees made consistently with the provisions of the PKPA' shall have the same effect and enforceability as domestic custody determinations"). Therefore, the fact that the PKPA and *Thompson* strictly limit full faith and credit enforcement to determinations made in compliance with the terms of the PKPA leads us to conclude that, if a state court's custody determination is not made consistently with the PKPA, then the custody determination is not entitled to full faith and credit enforcement.

Colorado statutes and case law incorporate the requirements of the PKPA. *See, e.g.,* 28 U.S.C. § 1738A(c)-(d), (h) (rules for initial jurisdiction, continuing jurisdiction, and jurisdiction to modify); §§ 14–13–201 to –203, C.R.S. (2010) (same); *A.J.C.,* 88 P.3d at 611 (recognizing that the PKPA controls whether Colorado must enforce another state's child custody determination). In 2000, the Colorado General Assembly adopted the provisions of and comments to the UCCJEA. *See* § 14–13–101, C.R.S.; *A.J.C.,* 88 P.3d at 608.[1] The UCCJEA is a uniform state law which was promulgated after the PKPA and intended to harmonize state law with the provisions of the PKPA. Uniform Child Custody Jurisdiction and Enforcement Act, Prefatory Note (Nat'l Conference of Comm'rs on Unif. State

---

**1.** Section 14–13–101, C.R.S. states that Article 13 "shall be known as and may be cited as the 'Uniform Child-custody Jurisdiction and Enforce-

ment Act' " and explains in the official comment the purposes of the Act.

Laws 1997) (stating that the UCCJEA "revises the law on child custody jurisdiction in light of [the PKPA]" and explaining how the UCCJEA incorporates the PKPA's requirements). Because Colorado enacted the UCCJEA, its statutes regarding jurisdiction over child custody disputes and enforcement of foreign custody decrees are substantively identical to the PKPA. *Compare* 28 U.S.C. § 1738A(c)-(d), (h) (rules for initial jurisdiction, continuing jurisdiction, and jurisdiction to modify), *with* §§ 14–13–201 to –203, C.R.S. (same).

As relevant to whether Colorado has jurisdiction to enter an initial custody determination, section 14–13–201, C.R.S. provides the same bases to establish initial jurisdiction as does the PKPA, as relevant here: (1) home state and (2) significant connection. Likewise, both the PKPA and section 14–13–201, C.R.S. prioritize home state jurisdiction over significant connection jurisdiction.

Subsection (c) of the PKPA provides in relevant part:

(c) A child custody ... determination made by a court of a State is consistent with the provisions of this section *only if*—

(1) such court has jurisdiction under the law of such State; and

(2) one of the following conditions is met:

(A) such State (i) is the *home State of the child on the date of the commencement of the proceeding,* or (ii) had been the child's home State within six months before the date of the commencement of the proceeding ... and a contestant continues to live in such State;

(B) (i) *it appears that no other State would have jurisdiction under subparagraph (A),* and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the *child and his parents, or the child and at least one contestant, have a significant connection with such State* other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

. . . .

(D) (i) it appears that *no other State would have jurisdiction under subparagraph (A),* (B), (C), or (E), *or another State has declined to exercise jurisdiction* on the ground that the State whose jurisdiction is in issue is the more appropriate forum to determine the custody ... of the child, and (ii) it is in the best interest of the child that such court assume jurisdiction.

(Emphasis added). Similarly, section 14–13–201, C.R.S. provides in relevant part:

(1) Except as otherwise provided in section 14–13–204 [emergency jurisdiction], a court of this state *has jurisdiction to make an initial child-custody determination only if:*

(a) *This state is the home state of the child on the date of the commencement of the proceeding,* or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

(b) *A court of another state does not have jurisdiction under a provision of law adopted by that state that is in substantial conformity with paragraph (a)* of this subsection (1), *or a court of the home state of the child has declined to exercise jurisdiction* on the ground that this state is the more appropriate forum under a provision of law adopted by that state that is in substantial conformity with section 14–13–207 or 14–13–208, and:

(I) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a *significant connection* with this state other than mere physical presence; and

(II) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

(Emphasis added). The official comment to section 14–13–201, C.R.S. reinforces that the PKPA and the UCCJEA as enacted by Colorado are substantively the same by stating that the UCCJEA prioritizes home state jurisdiction "in the same manner as the PKPA

thereby eliminating any potential conflict between the two acts."

Regarding whether Colorado must enforce a custody determination rendered by a another state, Colorado statutes mandate that a Colorado court is obligated to enforce the child custody determination of another state when it determines that the sister state made the determination in "substantial conformity" with or under factual circumstances satisfying the jurisdictional requirements of the UCCJEA. § 14–13–303(1), C.R.S. (2010). Section 14–13–303(1), C.R.S. states:

> A court of this state shall recognize and enforce a child-custody determination of a court of another state if the latter court exercised jurisdiction in substantial conformity with this article or the determination was made under factual circumstances meeting the jurisdictional standards of this article.

The official comment to section 14–13–303, C.R.S. clarifies that this section "now make[s Colorado's] duty to enforce . . . a child custody determination of another State consistent with the enforcement . . . provisions of the PKPA."

Likewise, in *A.J.C.*, this court recognized that the PKPA controls whether Colorado must enforce another state's child custody determination. 88 P.3d at 611. We concluded that, because the PKPA imposes a rule of determination in interstate jurisdictional child custody disputes, when another state has already entered a child custody determination, "we inquire . . . whether the first-in time court's exercise of jurisdiction was in accordance with the PKPA." *Id.*

Because Colorado statutes and case law incorporate the requirements of the PKPA, if a sister state exercised jurisdiction in accordance with the PKPA, then its exercise of jurisdiction would necessarily be in substantial conformity with Colorado law. Accordingly, we now consider whether the Nebraska court's exercise of jurisdiction was in

accordance with the PKPA such that Colorado must recognize and enforce the Nebraska custody determination.

### C. Whether Nebraska's Exercise of Jurisdiction Accorded with the PKPA

■ The PKPA dictates whether Colorado must accord full faith and credit to the Nebraska custody determination. If Nebraska exercised jurisdiction consistently with the provisions of the PKPA, then Colorado must accord it full faith and credit. However, if the Nebraska determination was not made consistently with the requirements of the PKPA, then the custody determination is not entitled to full faith and credit enforcement in Colorado.

The PKPA provides that a state's custody determination is made consistently with the PKPA when: (1) the court of the state has jurisdiction under its own law, 28 U.S.C. § 1738A(c)(1); [2] and (2) the exercise of jurisdiction meets one of the conditions set out in 28 U.S.C. § 1738A(c)(2).[3] Because we determine that the Nebraska district court did not have jurisdiction over this custody determination under its own law—as it was not the child's home state, and the home state did not decline jurisdiction—we therefore conclude that the PKPA does not obligate Colorado to accord the Nebraska determination full faith and credit.

Nebraska Revised Statutes section 43–1238(a), which sets out the requirements for Nebraska to exercise jurisdiction to make an initial child custody determination, provides four independent bases for jurisdiction to make an initial child custody determination. Only the first two are relevant here: (1) home state and (2) significant connection. Neb.Rev.Stat. § 43–1238(a). These four bases constitute "the exclusive jurisdictional basis for making a child custody determination by a court of [Nebraska]." *Id.* § 43–1238(b).

---

**2.** Nebraska has also adopted the UCCJEA; therefore, like Colorado, the jurisdictional provisions of Nebraska law are substantively identical to the PKPA. *See* 28 U.S.C. § 1738A(b)-(c); Neb.Rev. Stat. §§ 43–1227, –1238. Because the PKPA and the UCCJEA as enacted by Nebraska are substantively identical, our analysis of the first part of

the PKPA test necessarily incorporates the second part.

**3.** The conditions relevant to this case, dealing with jurisdiction to enter an initial custody determination, are set out on page 15, supra.

As with the PKPA, Nebraska Revised Statutes section 43–1238(a) gives priority to home state jurisdiction. *See also* 28 U.S.C. § 1738A(c)(2)(A)-(D). To have jurisdiction to enter an initial custody award, Nebraska Revised Statutes section 43–1238(a)(1) requires that, at the commencement of the custody proceeding, Nebraska must be the home state of the child or have been the home state of the child within the last six months. "[A] court's jurisdiction must exist at the time an action is filed and cannot be attained after such date regardless of the amount of time spent by the children in the state subsequent to the filing of a custody action." *White v. White*, 271 Neb. 43, 709 N.W.2d 325, 332 (2006).

The home state of the child is "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding" including "a period of temporary absence." Neb.Rev. Stat. § 43–1227(7). Construed together, sections 43–1227 and 43–1238 of the Nebraska Revised Statutes provide for six-month extended home state jurisdiction, meaning that a state is the child's home state if the child lived in the state for a consecutive six-month period either immediately before the filing of the custody proceeding or at any time during the six months before the filing of the custody proceeding. *See* Neb.Rev.Stat. §§ 43–1227(7), –1238(a).

If Nebraska is not the home state of the child, then it may exercise significant connection jurisdiction "*only if*": (1) another state does not have jurisdiction as the child's home state; or (2) the home state "has declined to exercise jurisdiction on the ground that [Nebraska] is the more appropriate forum under section 43–1244 or 43–1245." Neb.Rev.Stat. § 43–1238(a)(2) (emphasis added). To confer significant connection jurisdiction to Nebraska based on the home state declining jurisdiction, Nebraska Revised Statutes section 43–1238(a)(2) requires that the child's home state declined jurisdiction on the ground that either the home state is an inconvenient forum under section 43–1244 or the party seeking jurisdiction in the home state engaged in unjustifiable conduct under section 43–1245.

As to declining jurisdiction on grounds of inconvenient forum, Nebraska statutes and case law require the court declining jurisdiction to consider a list of statutory factors and allow the parties to submit information for its consideration before declining jurisdiction. Neb.Rev.Stat. § 43–1244(b); *Watson v. Watson*, 272 Neb. 647, 724 N.W.2d 24, 34–35 (2006). Nebraska Revised Statutes section 43–1244 states that, to determine whether Nebraska is an inconvenient forum, a court "shall allow the parties to submit information" and "shall consider" a list of factors. These factors include, among others: (1) the length of time the child has resided outside the forum state; (2) any agreement of the parties as to which state should assume jurisdiction; (3) the nature and location of the evidence required to resolve the pending litigation, including the testimony of the child; and (4) the familiarity of the court of each state with the facts and issues in the pending litigation. Neb.Rev.Stat. § 43–1244; *see In re Floyd B.*, 254 Neb. 443, 577 N.W.2d 535, 546 (1998) (stating factors a court was required to consider under a previous version of the statute). Interpreting section 43–1244, the Supreme Court of Nebraska held that a district court that did not engage in a proper consideration of the relevant factors failed to comply with the UCCJEA and, thus, committed reversible error. *Watson*, 724 N.W.2d at 34–35.

A court may also decline jurisdiction on the basis that the party seeking jurisdiction in the forum state engaged in unjustifiable conduct.[4] Neb.Rev.Stat. § 43–1245. The purpose of Nebraska Revised Statutes section 43–1245, construed together with home state prioritization, is to prevent parents

4. In its April 2007 order, the Nebraska court reasoned, in part, that pursuant to Nebraska Revised Statutes section 43–1245, the mother "acquiesced in [Nebraska?s] exercise of jurisdiction." Our analysis does not require us to address this issue. However, we note that the mother objected to Nebraska exercising jurisdiction in this case when she filed a motion to dismiss the Nebraska proceedings. Furthermore, the Adams County district court did not dismiss the proceeding on the basis of unjustifiable conduct, as required by Nebraska Revised Statutes sections 43–1238 and 43–1245.

from abducting their children or engaging in reprehensible conduct such as "removing, secreting, retaining, or restraining" the child in order to establish jurisdiction. UCCJEA § 208 cmt. 1. Discussing a previous version of this statute, the Supreme Court of Nebraska has defined unjustifiable conduct as "where one party without consent improperly removes the child from [the] party with [the] right to custody." *White*, 709 N.W.2d at 333. Allowing a party to establish jurisdiction on this basis, the court stated, would "circumvent[ ] the intent of the jurisdiction laws.'" *Id.* (quoting *Marriage of Ieronimakis*, 66 Wash.App. 83, 831 P.2d 172, 177 (1992)).

In this case, the child lived in Colorado with at least one parent from August 2003 until the summer of 2004, more than six consecutive months. Then, after the child's scheduled visit with her father in Nebraska, the father refused to return the child to Colorado. After the father refused to return the child to Colorado, the child lived in Nebraska with her father for just over five months before her father commenced the Nebraska custody action in November 2004. In its September 2006 order giving custody of the child to the father, the Nebraska district court failed to state its grounds for exercising jurisdiction under the UCCJEA.

Because the child had lived in Colorado for six consecutive months immediately before the father commenced the custody proceeding and had not lived in Nebraska for six consecutive months, Colorado, and not Nebraska, was the child's home state. To allow the father to establish jurisdiction in Nebraska by refusing to return the child to the mother, as required by the parties' agreement that the child would reside in Colorado with her mother, would contravene the purposes of the UCCJEA and the PKPA, both of which seek to prevent parental kidnapping and equivalent misconduct. Because Nebraska was not the child's home state at the time the father commenced the custody proceeding, the Nebraska court could only have properly exercised jurisdiction if Colorado declined to exercise jurisdiction on the ground that Nebraska is the more appropriate forum under section 43–1244 or 43–1245 of the Nebraska Revised Statutes. Thus, we

consider whether Colorado declined jurisdiction on one of these grounds.

In its April 2007 order, the Nebraska district court acknowledged that the child had been living in Nebraska for less than six months when the father commenced the custody proceeding, but it concluded that it could properly exercise jurisdiction because Colorado declined jurisdiction. The Nebraska court based its determination that Colorado declined jurisdiction on the decision of the Adams County district court to dismiss the mother's action for dissolution of marriage. In its minute order dismissing the case, the Adams County district court stated only that "the State of Nebraska has jurisdiction over this matter." It failed to provide reasons for declining jurisdiction and to engage in even a cursory consideration of whether Nebraska is a more appropriate forum. The district court did not mention child custody, the UCCJEA, home state jurisdiction, inconvenient forum, or unjustifiable conduct.

Like the Nebraska district court in *Watson*, the Adams County district court failed to engage in any consideration of the relevant statutory factors for inconvenient forum, as required by Nebraska Revised Statutes section 43–1244. *See* 724 N.W.2d at 34–35. It also failed to consider whether the party seeking to invoke its jurisdiction engaged in unjustifiable conduct under Nebraska Revised Statutes section 43–1245 (or its Colorado equivalent). The district court did not consider that the parties agreed that the child would reside in Colorado with the mother and that the father likely engaged in unjustifiable conduct by retaining the child in Nebraska after the termination of her scheduled visit and, thus, did not decline jurisdiction on those grounds.

Accordingly, because Colorado, and not Nebraska, had jurisdiction as the child's home state and Colorado did not decline jurisdiction "on the ground that [Nebraska] is the more appropriate forum under [Nebraska Revised Statutes] section 43–1244 or 43–1245," Neb.Rev.Stat. § 43–1238(a)(2), Nebraska did not have jurisdiction over this matter under its own law. As Nebraska did not have jurisdiction under its own law, the PKPA does not require Colorado to accord

the Nebraska custody determination full faith and credit.

## IV. Conclusion

For these reasons, we reverse the judgment of the court of appeals and remand the case to that court to return the case to the trial court for proceedings consistent with this opinion.

Justice COATS dissents, and Justice MARTINEZ and Justice MÁRQUEZ join in the dissent.

Justice COATS, dissenting.

I decline to join the majority opinion, not from any particular dispute over its interpretation of the jurisdictional standards and priorities of the PKPA or UCCJEA but because I believe our enactment of the UCCJEA requires us to accept Nebraska's own determination of its jurisdiction. I also believe that my differences with the majority in this regard go to the heart of the UCCJEA and the rationale of the National Conference for replacing the Uniform Child Custody Jurisdiction Act (UCCJA). By construing the UCCJEA to sanction its collateral attack on Nebraska's jurisdictional determination, expressly made under the provisions of that act, the majority merely perpetuates the promulgation of conflicting state child-custody orders and, therefore, the very jurisdictional stalemate the UCCJEA was drafted to end. Because I believe our own jurisdictional statute forbids us from modifying a child-custody order of another state that was made under a provision of law in substantial conformity with our own, I respectfully dissent.

The applicability of the Full Faith and Credit Clause to the interstate enforcement of child custody orders has long presented vexing problems. *See In re Baby Girl Clausen*, 442 Mich. 648, 502 N.W.2d 649, 661–62 (1993). Relying largely on a need to account for ever-changing circumstances, many states have treated the child custody orders of sister states as falling outside the reach of full faith and credit. *See Thompson v. Thompson*, 484 U.S. 174, 182, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988). To resolve the problem of conflicting child-support orders from dif-

ferent jurisdictions, in 1968 the National Conference of Commissioners on Uniform State Laws drafted the Uniform Child Custody Jurisdiction Act (UCCJA), which was subsequently adopted in some form by all 50 states and the District of Columbia. *See L.G. v. People*, 890 P.2d 647, 655 & n. 13 (Colo.1995). For a variety of reasons, not least among which were its overlapping jurisdictional provisions and its highly ambiguous definition of "custody proceedings," however, deference to sister state orders remained inconsistent.

A dozen years later, in 1980, Congress responded to these disparate interpretations of the uniform act and continuing disputes over the enforceability of other states' custody decisions by adopting the Parental Kidnapping Prevention Act (PKPA). Pub.L. No. 96–611, §§ 6–10, 94 Stat. 3566 (1980). As the Supreme Court has made clear, the PKPA did not create a new federal cause of action but simply described the circumstances under which the requirements of full faith and credit extend to child custody orders. *Thompson*, 484 U.S. at 182–83, 108 S.Ct. 513. The federal PKPA imposed a duty on all states to enforce and not modify the custody determinations of other states that are consistent with the PKPA itself. 28 U.S.C. § 1738A(a) (2006). Although it articulated a clear hierarchy among jurisdictional prerequisites, the PKPA also incorporated various provisions of state UCCJA law. Perhaps for this reason, as well as its extension of full faith and credit only to custody orders consistent with the PKPA itself, deference to sister state custody orders has continued to be inconsistent. *Compare E.E.B. v. D.A.*, 89 N.J. 595, 446 A.2d 871 (1982), *with Clausen*, 442 Mich. 648, 502 N.W.2d 649.

Almost 30 years after promulgating the UCCJA, the National Conference therefore revisited the law of child-custody jurisdiction, and in an attempt to "eliminate the inconsistent state interpretations and harmonize the UCCJA with the PKPA," replaced the UCCJA with the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). *See* Unif. Child Custody Jurisdiction Prefatory Note, Title 14, art. 13, Part 1, C.R.S. (2010). Since its promulgation in 1997, the

UCCJEA has now been adopted by at least 48 states, including Colorado. See Ch. 320, sec. 1, §§ 14–13–101 to –403, 2000 Colo. Sess. Laws 1519–37. Key among the expressed purposes of the UCCJEA were its clarification of the standards for exercising original jurisdiction over a child custody determination; its enunciation of a standard of continuing jurisdiction; and its clarification of modification jurisdiction. *See* Unif. Child Custody Jurisdiction Prefatory Note. The new uniform act's prefatory note also characterizes the PKPA as mandating that "state authorities give full faith and credit to other states' custody determinations, so long as those determinations were made in conformity with the provisions of the PKPA," *id.,* and in interpreting the requirements of the PKPA, both the uniform act and Colorado's enactment of it repeat variations of that language throughout their jurisdictional provisions. *See, e.g.,* Unif. Child Custody Jurisdiction & Enforcement Act § 206(a), 9 U.L.A. 680 (1999); § 14–13–206(1), C.R.S. (2010).

Nowhere, however, does the UCCJEA state or (at least in my opinion) even imply that a modifying or enforcing state is to disregard established principles of finality and res judicata and re-determine for itself the correctness of jurisdictional determinations, made by applying the identical provisions of the UCCJEA, by other jurisdictions responsible for initial child-custody determinations. Once the question of initial jurisdiction has been fully and finally litigated in another state, according to provisions in substantial conformity with the UCCJEA, that determination is entitled to credit, whether or not a court of this state would have reached the same conclusion. To conclude otherwise not only undermines the fundamental rationale behind both the PKPA and UCCJEA, but also perpetuates a jurisdictional stalemate among the states and leaves unreconciled their competing enforcement orders.[1]

Although this matter comes to us, in the language of the UCCJEA, from a Colorado district court's "modification" of Nebraska's initial child-custody determination rather than a proceeding to enforce the Nebraska order, the majority relies heavily on language of section 14–13–303(1), C.R.S. (2010), entitled "Duty to Enforce," requiring us to recognize and enforce an order of another state if that state "exercised jurisdiction in substantial conformity with this article . . . ." And while section 14–13–203, C.R.S. (2010), permits this state to modify an initial child-custody determination of another state only if that state no longer has exclusive, continuing jurisdiction, the comment to that section indicates that it intends only to limit our jurisdiction to modify a custody determination "made consistently with this Act." Despite there being colorable grounds to question the Nebraska court's conclusion, apparently made from nothing more than a brief minute order, that the Adams County District Court dismissed as an inconvenient forum in favor of Nebraska, see § 14–13–207, C.R.S. (2010), rather than simply because there already existed an ongoing proceeding in another jurisdiction, see § 14–13–206, it cannot be disputed that the matter was fully and finally litigated in the courts

---

**1.** Beyond exemplifying the type of jurisdictional standoff Congress and the National Conference sought to eliminate, the tumultuous facts of this case also illustrate well the back-and-forth "grab and run" actions of parents the UCCJEA and PKPA were designed to deter through mandated recognition of foreign child-custody determinations. Contrary to a signed visitation agreement giving Mother custody of the child, Father retained the child in Nebraska following an agreed-upon visit in the summer of 2004. Father proceeded to seek custody in the Nebraska district court, but that court awarded temporary custody to Mother in Colorado in February 2005. Mother's temporary custody was short-lived, however, because the Nebraska court issued its final decree in September 2006 granting Father custody. Mother sought reprieve in the district court for La Plata County, Colorado; that court not only determined it had home-state jurisdiction but also entered temporary orders permitting Father visitation over the 2006 Thanksgiving holiday. That visit, in turn, again allowed Father to retain the child in Nebraska, prompting Mother to seek a warrant for the child's immediate physical custody. The Colorado district court declined to issue the warrant, explaining that it was "unlikely" that Nebraska would enforce the warrant in light of the conflicting Colorado and Nebraska orders regarding jurisdiction. Mother therefore regained custody only through self-help measures, which allegedly caused her physical injury at the hands of Father. Having found Mother willfully disregarded its final decree granting Father custody, the Nebraska district court issued a warrant for the physical custody of the child.

212

of Nebraska according to the procedural requirements and jurisdiction standards of the UCCJEA, and applying those standards, the Nebraska court determined that it had jurisdiction.

It is undisputed that the Nebraska district court was an appropriate court in that jurisdiction to render a child-custody order. *Cf. Travelers Indem. Co. v. Bailey,* —— U.S. ——, 129 S.Ct. 2195, 2206 n. 6, 174 L.Ed.2d 99 (2009) (noting exceptional circumstances where court's finding of subject-matter jurisdiction might be collaterally attacked, such as where bankruptcy court "conduct[ed] a criminal trial" or "resolve[d] a custody dispute"). It is also undisputed that the mother in this case was properly noticed by the Nebraska court as required by the UCCJEA, *see* § 14-13-108, C.R.S. (2010); Neb.Rev.Stat. § 43-1233 (2010); moved without success to dismiss for lack of jurisdiction; appealed without success the Nebraska district court's finding of jurisdiction; moved post-judgment for dismissal of the Nebraska district court's final orders without success; and finally appealed without success the denial of its post-judgment motion to dismiss for lack of jurisdiction. According to the record before us, the Colorado district court below failed to even acknowledge that an initial child-custody determination had been made by Nebraska, much less collaterally attack Nebraska's application of the UCCJEA as erroneous. The Colorado district court treated the Nebraska decree as nothing more than a dissolution of the marriage and proceeded to find Colorado the child's home state for purposes of issuing an initial child-custody order itself. For the first time, the majority now determines, on the basis of nothing more than the same minute order expressly considered by the Nebraska district court in denying the mother's motion to dismiss for lack of jurisdiction, that the Adams County District Court failed to properly and effectively decline jurisdiction according to the UCCJEA, and that Nebraska erred in determining that it was therefore free to exercise initial child-custody jurisdiction according to the provisions of the same act. *See* Unif. Child Custody Jurisdiction & Enforcement Act

§ 201(a)(3), 9 U.L.A. 671 (1999); § 14-13-201(1)(c), C.R.S. (2010); Neb.Rev.Stat. § 43-1238(a)(3) (2010). At least to my mind, it would be difficult to think of a case in which a court was less well situated, even if it were permitted to do so, to collaterally attack a final determination of another court.

While I do not consider them to be inconsistent, the UCCJEA nevertheless represents the Colorado legislature's understanding of the PKPA, and unless it is in some way unconstitutional, the UCCJEA controls the jurisdiction of Colorado courts over the modification and enforcement of foreign child-custody determinations. Both from its clearly expressed purposes and its repeated references not only to other states "having jurisdiction substantially in conformity with this article," § 14-13-206(1), but also to jurisdictional determinations of other states "under a provision of law adopted by that state that is in substantial conformity with" specific provisions of this article, § 14-13-307, C.R.S. (2010), I believe a jurisdictional determination of another state made on the basis of the provisions of the UCCJEA must be accepted by this state, without collateral challenge to the correctness of that determination. In the absence of such an understanding, I fail to see how replacement of the UCCJA by the UCCJEA has accomplished much of anything, or how, as this case amply demonstrates, the treatment of child-custody orders under the UCCJEA can meaningfully differ from the jurisdictional free-for-all that preceded it.

Because I believe the majority's resolution of this case is both mistaken and likely to have a deleterious impact on future interstate custody disputes, I respectfully dissent.

I am authorized to state that Justice MARTINEZ and Justice MÁRQUEZ join in this dissent.