The People focus on subsection (4.3)(b), arguing that "lacks a fixed residence" includes the situation of a person who "ceases to reside at an address in that jurisdiction" and "fails to register a *change of address* in the same jurisdiction." (Emphasis added.) Thus, they argue that if a person ceases to reside at an address and thereafter "lacks a fixed residence" within the meaning of section 16-22-108(3)(i), the person has "chang[ed] an address" within the meaning of section 18-3-412.5(1)(g).

2017 COA 119

**The PEOPLE of the State of Colorado, Petitioner-Appellee,**

**IN the INTEREST OF C.L.T., a Child,**

**and**

**Concerning L.T., Respondent-Appellant.**

**Court of Appeals No. 16CA1416**

Colorado Court of Appeals,
Div. III.

Announced September 7, 2017

---

Kristen M. Bronson, City Attorney, Laura Grzetic Eibsen, Assistant City Attorney, Denver, Colorado, for Petitioner-Appellee

Barry Meinster, Guardian Ad Litem

Wendy Lewis, PC, Wendy Lewis, Boulder, Colorado, for Respondent-Appellant

Opinion by JUDGE WEBB

¶ 1 This dependency and neglect proceeding raises a novel question: does the Uniform Child-custody Jurisdiction and Enforcement Act (UCCJEA), sections 14-13-101 to -403, C.R.S. 2016, require a trial court to make further inquiries to establish jurisdiction, although the court has received only limited information about child welfare proceedings in other states? L.T. (mother) appeals the judgment terminating the parent-child legal relationship between her and C.L.T. (the child), primarily on the basis that the trial court lacked jurisdiction to enter such a permanent order under the UCCJEA. We vacate the judgment and remand the case for the trial court to undertake further inquiries about proceedings concerning the child in other states, confer with courts in other states as appropriate, and then make express findings as to its UCCJEA jurisdiction.

## I. Background and Procedural History

¶ 2 In August 2015, the Denver Department of Human Services (DDHS) received a referral from police expressing concern about the nine-year-old child. DDHS learned that the child was the subject of an open sex abuse investigation by police in another jurisdiction. Also, DDHS was concerned about reports that the child was considerably behind in school; she had not been enrolled for 2015; and her parents often used her as an active participant in panhandling. The family had a history of substance abuse, mental health problems, domestic violence, and involvement with child welfare authorities in Texas and other states.

¶ 3 After DDHS filed a petition in dependency and neglect, the child was placed in foster care.

¶ 4 The trial court adjudicated the child dependent and neglected; it approved treatment plans for both mother and F.T. (father).

Mother's treatment plan required her to maintain consistent visitation with the child; engage in mental health services; participate in a substance abuse evaluation; cooperate with DDHS; and follow all recommendations. She was also required to show that she could provide safe, suitable housing for the child and income adequate to meet the child's financial needs.

¶ 5 Soon after the case had been opened, mother moved to North Carolina to be near her family. At first, she resided with her mother. But in December, the caseworker learned that she had been asked to leave her mother's home because she was no longer engaged in treatment.

¶ 6 In June 2016, DDHS moved to terminate the parental rights of both mother and father, alleging that they had not complied with their treatment plans and that both of them were unfit parents.

¶ 7 At trial, the caseworker testified that mother had not been successful in meeting any of the goals set forth in her treatment plan. Her visits with the child had been suspended in April 2016 because of her inconsistency and concerns about her mental health. She had no contact with the child after that date. She failed to complete a mental health evaluation, and the caseworker was unable to confirm any treatment in North Carolina. She admitted that she was addicted to drugs. She participated in substance abuse treatment, but she was discharged unsuccessfully from two treatment programs. She did not show that she could provide a safe and suitable home for the child or that she had an income sufficient to provide for the child. As time passed, she became less consistent in maintaining contact with the caseworker and her treating professionals.

¶ 8 The trial court found that although reasonable efforts had been made to rehabilitate mother, her treatment plan had not been successful, she was not fit to parent the child, and she was not likely to become fit within a reasonable period of time. The court made similar findings regarding father. Then it terminated the parental rights of both mother and father.

II. The Record Does Not Show that the Trial Court Had Jurisdiction Under the UCCJEA to Terminate Mother's Parental Rights

¶ 9 Mother first contends the trial court lacked jurisdiction to terminate her parental rights because it failed to comply with the UCCJEA. She argues that since a child welfare case remained open in Texas, when the Colorado case was filed, the Colorado court could exercise only emergency jurisdiction unless and until it acquired ongoing jurisdiction under the UCCJEA. We conclude that because the trial court did not develop the record by inquiring of the parties, further proceedings are necessary to resolve the jurisdictional issue.

A.   Additional Background

¶ 10 Shortly after mother, father, and the child came to the attention of DDHS in August 2015, DDHS caseworkers learned that they were recent arrivals from Texas. In the petition in dependency and neglect, DDHS alleged that the family had "a previous child welfare case in Texas" (also described as "an open child welfare case in Texas") as well as "child welfare history in Tennessee, Alabama, North Carolina, Mississippi and Oklahoma." Later, DDHS reported to the court that father "did not know that he had an open child welfare case in Kansas," bringing to seven the number of other states that may have been involved with the child.

¶ 11 According to a minute order of a hearing on August 25, 2015, the assistant county attorney representing DDHS told the court that "THE TX DHS HAS CLOSED THEIR CASE." The record does not include a transcript of this hearing. The record lacks further information about the Texas case and the status of the other proceedings referenced in the family's child welfare history.

¶ 12 So, based on the information in the record, the trial court could not have determined whether it had jurisdiction to enter any orders other than temporary emergency orders concerning the child. Yet, the court neither stayed the proceeding until additional information could be obtained nor examined the parties under oath as to matters pertinent to the court's jurisdiction. Indeed, the court never expressly determined that it had jurisdiction under the UCCJEA.

B.   Preservation and Standard of Review

¶ 13 Mother concedes that she did not raise the jurisdictional issue below but asserts that lack of jurisdiction can be raised for the first time on appeal. DDHS and the guardian ad litem agree. So do we. *See, e.g., People in Interest of N.D.V.*, 224 P.3d 410, 414 (Colo. App. 2009) (collecting cases).

¶ 14 Subject matter jurisdiction under the UCCJEA is reviewed de novo. *See, e.g., In re Marriage of Pritchett*, 80 P.3d 918, 920 (Colo. App. 2003). That review must start with a tour of the UCCJEA's jurisdictional provisions.

C.   Determining Jurisdiction Under the UCCJEA

¶ 15 In 2000, the UCCJEA and the comments to it were adopted by the Colorado General Assembly. *In re the Parental Responsibilities Concerning L.S.*, 257 P.3d 201, 205 (Colo. 2011). As relevant here, the purposes of the UCCJEA include avoiding jurisdictional competition and conflict with courts of other states in matters of child custody, promoting cooperation with the courts of other states so that a custody decree is rendered in the state that can best decide the case in the interest of the child, and avoiding relitigation of custody decisions of other states. § 14-13-101 official cmt. 1, C.R.S. 2016.

¶ 16 To achieve these purposes, the UCCJEA sets out a detailed and comprehensive framework that a court must use to determine whether it may exercise jurisdiction in a child custody matter, or whether it may (or, in some cases, must) defer to a court of another state. The framework covers temporary emergency jurisdiction, ongoing jurisdiction to enter an initial child custody order, and jurisdiction to modify another state's earlier child custody order.

1.   Temporary Emergency Jurisdiction

¶ 17 A Colorado court has temporary emergency jurisdiction to make a child custody determination concerning a child who is

present in Colorado if either the child has been abandoned or the child is in need of protection because the child, or a sibling or parent of the child, has been subjected to or threatened with mistreatment or abuse. § 14-13-204(1), C.R.S. 2016.

¶ 18 Mother presumes, and we agree, that on August 21, 2015, when DDHS was granted temporary custody of the child based on concerns about homelessness, substance abuse, and possible sexual abuse, the trial court properly exercised emergency jurisdiction under section 14-13-204(1). The child was present in Colorado. And based on the concerns expressed in the affidavit supporting the DDHS request for temporary custody of the child, the court could reasonably have concluded that the child was being subjected to or threatened with mistreatment or abuse, although it did not make such a finding.

### 2. Ongoing Jurisdiction

¶ 19 Because the jurisdiction conferred by section 14-13-204(1) is temporary, a court exercising such jurisdiction must promptly investigate to determine whether it, or a court in another state, has ongoing, non-emergency jurisdiction. To make this decision, the court must first ascertain whether a child custody proceeding has been commenced in another state, and, if so, whether a previous child custody determination has been made. Definitions in the UCCJEA inform that decisional process.

¶ 20 The UCCJEA broadly defines a "child-custody proceeding" to include proceedings concerning the legal custody or physical custody of a child, the allocation of parental responsibilities for a child, or visitation or parenting time (including grandparent or great-grandparent visitation). Child custody proceedings also include proceedings for divorce, dissolution of marriage, legal separation, neglect, abuse, dependency, guardianship, paternity, termination of parental rights, and protection from domestic

violence and domestic abuse. § 14-13-102(4), C.R.S. 2016.

¶ 21 A "child-custody determination" is a judgment, decree, or other order of a court providing for the legal or physical custody of a child, allocating parental responsibilities for a child, or providing for visitation or parenting time with respect to a child. The judgment, decree, or order may be permanent, temporary, initial, or a modification of an earlier judgment, decree, or order. § 14-13-102(3).

¶ 22 To enable Colorado courts to decide whether a child custody proceeding may be ongoing in another state, and whether a child custody determination may have been made in another state, section 14-13-209(1), C.R.S. 2016, provides that each party[1] to a child custody proceeding "shall give information" as to whether the party

(a) Has participated, as a party or witness or in any other capacity, in any other proceeding concerning the custody of or visitation or parenting time with the child and, if so, identify the court, the case number, and the date of the child-custody determination, if any;

(b) Knows of any proceeding that could affect the current proceeding, including proceedings for enforcement and proceedings relating to domestic violence or domestic abuse, protective orders or restraining orders, termination of parental rights, and adoptions and, if so, identify the court, the case number, and the nature of the proceeding; and

(c) Knows the names and addresses of any person not a party to the proceeding who has physical custody of the child or claims rights of parental responsibilities or legal custody or physical custody of, or visitation or parenting time with, the child and, if so, the names and addresses of those persons.

¶ 23 If a Colorado court learns that a custody proceeding has already been commenced in a court of another state, or that an

---

1. The statute does not define "parties" in a dependency and neglect proceeding. Typically, they include, in addition to the child's parents; the social services agency responsible for initiating the proceeding; the child's guardian ad litem, if

one has been appointed; and any other persons who may have acquired party status as intervenors or otherwise, such as grandparents or foster parents.

out-of-state custody order has been entered, the Colorado court must communicate with the court of the other state before continuing. § 14-13-206(2), C.R.S. 2016; *Brandt v. Brandt*, 2012 CO 3, ¶ 35, 268 P.3d 406; *see also* § 14-13-110, C.R.S. 2016 (procedure for communication between courts).

¶ 24 Based on the information provided by the parties and any discussions with the court or courts of another state, a Colorado court must decide whether it has ongoing jurisdiction to enter an initial child custody order, or, if a child custody order already exists, whether it has jurisdiction to modify the earlier order.

### a. Initial Jurisdiction

¶ 25 An initial child custody determination is the first child custody determination concerning a particular child. § 14-13-102(8). Under section 14-13-201(1), C.R.S. 2016, a Colorado court has jurisdiction to make an initial child custody determination only if it has "home state" jurisdiction, "significant connection" jurisdiction, "more appropriate forum" jurisdiction, or last resort jurisdiction. *Madrone v. Madrone*, 2012 CO 70, ¶¶ 11-17, 290 P.3d 478. The UCCJEA defines each type of jurisdiction.

¶ 26 The court has home state jurisdiction if Colorado is the child's home state on the date the proceeding commences, or was the child's home state within one hundred eighty-two days before the proceeding commenced and the child is absent from Colorado but a parent or person acting as a parent continues to live in Colorado. § 14-13-201(1)(a). The UCCJEA prioritizes home state jurisdiction for initial orders.[2] § 14-13-201 official cmt. 1; *Madrone*, ¶ 11.

¶ 27 "Significant connection" jurisdiction arises if the child has no home state (or the home state determines that Colorado would be a more appropriate forum); the child and at least one parent or person acting as a parent has a significant connection with Colorado other than "mere physical presence";

and substantial evidence is available in Colorado concerning the child's care, protection, training, and personal relationships. § 14-13-201(1)(b).

¶ 28 "More appropriate forum" jurisdiction exists if all courts with home state jurisdiction or significant connection jurisdiction decline to exercise their jurisdiction on the ground that the Colorado court is the more appropriate forum to determine the custody of the child. § 14-13-201(1)(c).

¶ 29 Finally, if the child has no home state, and no other court has either "significant connection" jurisdiction or "more appropriate forum" jurisdiction, then the Colorado court may assert jurisdiction as the court of last resort. § 14-13-201(1)(d). But the inquiry does not end with finding one of these types of jurisdiction.

### b. Jurisdiction to Modify Another State's Order

¶ 30 Recall, the UCCJEA seeks to prevent the simultaneous exercise of jurisdiction over custody issues by more than one state. *People in Interest of M.C.*, 94 P.3d 1220, 1223 (Colo. App. 2004). To ensure that only one proceeding will continue, the UCCJEA provides that a court which has made a child custody determination consistent with the UCCJEA generally retains exclusive, continuing jurisdiction over the determination until the child and the child's parents no longer live in the state or have a significant connection with the state. § 14-13-202, C.R.S. 2016.

¶ 31 Under section 14-13-203, C.R.S. 2016, a Colorado court may modify a child custody determination if two conditions are met. First, the Colorado court must have jurisdiction to make an initial determination as provided in section 14-13-201(a) or (b). Second, one of the following must be true: the court of the other state has determined that it no longer has exclusive, continuing jurisdiction; the court of the other state has determined that the Colorado court would be a more convenient forum; or a court of either state

---

2. In prioritizing "home state" jurisdiction, the UCCJEA is consistent with the Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A (2012). An initial child custody determination that is consistent with the PKPA is entitled to full faith and credit in the courts of other states. *See* 28 U.S.C. § 1738A(b)(4).

has determined that the child, the parents, and anyone acting as a parent do not presently reside in the other state.

¶ 32 This tour brings us back to the dilemma that the trial court faced.

D. The Trial Court Did Not Have Sufficient Information to Determine Whether It Had Jurisdiction to Enter Permanent Orders

¶ 33 To be sure, the trial court had very limited information about previous child custody proceedings. Initial inquiries by DDHS indicated that the family had been involved in child welfare proceedings in several states, including, most recently, Texas. DDHS reported that the Texas proceedings were "closed," but the court was not told whether the proceedings were closed with a "child custody order" as defined by the UCCJEA. Even less information was provided about the child welfare proceedings in other states.

¶ 34 Even so, the UCCJEA offers an escape. Where information provided about previous child custody proceedings or orders is insufficient to allow a court to determine whether it, or another court, has jurisdiction to enter an initial custody order or modify an existing order, the court has two options.

¶ 35 First, under section 14-13-209(2), the court may stay the proceeding until the necessary information is furnished. Second, under section 14-13-209(3), the court may require a party who has provided information about other custody proceedings or persons having physical custody of the child or a claim to custody, parental responsibilities, or visitation, to provide additional information under oath. And the court may examine the parties under oath "as to details of the information furnished and other matters pertinent to the court's jurisdiction and the disposition of the case." But in the case before us, for reasons known only to the trial court, it did not pursue either option.

¶ 36 Because of the UCCJEA's multi-layered approach to jurisdiction, as described above, the better practice would be for trial courts to make specific findings on jurisdiction. Be that as it may, we construe the trial court's order terminating the parent-child legal relationship to include an implicit finding that it had subject matter jurisdiction to enter such an order. *See, e.g., Janicek v. Obsideo, LLC*, 271 P.3d 1133, 1138 (Colo. App. 2011) ("While the trial court did not explicitly reject homeowners' contractual interpretation argument, such a finding was implicit in the court's ruling that homeowners were not entitled to claim a homestead exemption."). Still, based on the limited information in the record, we are unable to determine whether the court had jurisdiction to enter any order beyond the temporary emergency order.

¶ 37 Jurisdictional uncertainty begins because the record shows that Colorado was not the child's home state when DDHS initiated this proceeding. The caseworker testified that the child had been placed in the home of a family friend in Texas for "two or three months" around the beginning of the summer of 2015, and the family came to Colorado the day after the child was returned to her parents' care. For a child who is more than six months old when a child custody proceeding begins, the child's home state is the state in which the child lived with a parent or person acting as a parent for at least one hundred eighty-two consecutive days immediately before the commencement of the proceeding. Because the caseworker's testimony shows that the child and her parents were in Texas until shortly before they arrived in Colorado, Colorado was not the child's home state.

¶ 38 Of course, home state jurisdiction is not required either for entering an initial child custody order or modifying an existing child custody order under the UCCJEA. Jurisdictional alternatives exist. But uncertainty continues because the record falls short of enabling us to discern whether a jurisdictional alternative might apply. Specifically, the record does not reveal whether Texas or any other state was the child's home state, or might have had another basis for asserting jurisdiction. As well, we are unable to determine whether a child custody proceeding was ongoing in another state when the Colorado proceeding was initiated, much less whether

a child custody determination had been entered by another state.

¶ 39 True enough, the record shows that an assistant county attorney told the court that the Texas Department of Human Services had "closed its case." But whether a court proceeding had begun in Texas (or in any of the other states in which this family had child welfare history), and if so whether such a proceeding had ended, is indeterminable. Whether a child custody determination, as defined in section 14-13-102(3), had been made is equally unclear.

¶ 40 Apparently, because the trial court was told that the Texas case had been closed, and was not advised as to the existence of child custody proceedings or child custody orders in other states, the court did not consult with courts in any other state. Unfortunately, we cannot know whether such courts might have determined that the Colorado court should exercise jurisdiction in this case.

¶ 41 In the end, because we are unable to determine whether the trial court had jurisdiction to terminate either parent's parental rights—and the record contains at least some indication that the court may not have had the requisite jurisdiction—we conclude that the judgment must be vacated, and the case must be remanded for further proceedings to determine jurisdiction.

¶ 42 In so holding, we acknowledge the burden placed on trial courts where parties provide skeletal information that may suggest—but by no means establish—a child custody proceeding in another state. But because that burden arises from legislative action, we are powerless to lessen it. *See Interest of K.N.*, 977 P.2d 868, 873 (Colo. 1999) ("If the court finds that the offer of proof is sufficient, then the court must follow specific procedures as set forth in the statute."). And in any event, our holding does not force trial courts faced with minimal information to go on scavenger hunts. Instead, those courts can shift the burden to the parties by requiring them to provide, to the extent that it is "reasonably ascertainable," all of the information required by section 14-13-209. Only then need the court decide whether it must consult with a court in another state.

### III. Other Issues

¶ 43 Having concluded that the judgment must be vacated, we will not address the additional issues raised by mother.

### IV. Conclusion

¶ 44 The judgment is vacated and the case is remanded to the trial court for further proceedings to determine whether it has jurisdiction to enter a permanent order and to make appropriate findings. The court's temporary emergency jurisdiction under section 14-13-204 shall remain in place pending the court's determination as to whether it has jurisdiction to enter a permanent order.

¶ 45 On remand, the court should direct each party to provide the information required by section 14-13-209(1). When the court has received this information, the court may make further inquiries of the parties as provided by section 14-13-209(3), communicate with the court(s) of other state(s) as discussed in *Brandt*, and undertake such other proceedings as it deems necessary to determine whether it has jurisdiction to enter an initial child custody determination under section 14-13-201, or, if a child custody determination has already been made by a court in another state, whether it has jurisdiction to modify that determination under section 14-13-203.

¶ 46 If the trial court determines, after communicating with the court of another state, that the other state court has jurisdiction to make child custody determinations under the UCCJEA and that the other state court intends to exercise its jurisdiction, the trial court's temporary jurisdiction shall continue, and any temporary orders shall remain in effect, for the period that the Colorado court and the court of the other state determine is necessary. At the conclusion of that period, the trial court shall dismiss the case.

¶ 47 If the trial court determines that it had jurisdiction to terminate both mother's and father's parental rights, or that it now has jurisdiction to do so, it shall make new findings regarding its jurisdiction. It may then re-issue its judgment, incorporating such findings, and mother may appeal that

determination. She may also renew her appeal as to the issues that we have not addressed.

JUDGE BOORAS and JUDGE FREYRE concur.