BECKY A. WHITE, APPELLANT, V.
VERLYN J. WHITE, APPELLEE.
709 N.W.2d 325

Filed February 3, 2006.   No. S-05-135.

John J. Kohl, of Raynor, Rensch & Pfeiffer, for appellant.

Stan A. Emerson, of Sipple, Hansen, Emerson & Schumacher, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

HENDRY, C.J.

## INTRODUCTION

Becky A. White, now Becky A. Bedore, appeals the order of the Platte County District Court granting Becky's ex-husband, Verlyn J. White, permanent custody of the parties' children. We

granted Becky's petition to bypass the Nebraska Court of Appeals.

## FACTUAL BACKGROUND

Becky and Verlyn were divorced in Kansas in April 1999. At the time of the divorce, the parties had three minor children: Andrea, born July 29, 1992; Cameron, born August 30, 1994; and Blaize, born July 9, 1997. The Kansas district court awarded the parties joint custody of the children, with the "primary place of residence" of the children to be with Becky.

Prior the entry of the divorce decree, Verlyn moved from Kansas to Nebraska. In September 1999, Becky and the children also moved from Kansas to Nebraska, where they lived until August 12, 2000. On August 12, Becky and the children moved to Colorado.

On August 10, 2000, Verlyn petitioned the Kansas district court for a change in the permanent residency of the children. Becky responded by filing a motion to dismiss, challenging the district court's subject matter jurisdiction. On April 6, 2001, the Kansas district court denied Becky's motion to dismiss, concluding that it did have jurisdiction but finding that no material change in circumstance justified a change in permanent residence.

In December 2002, Verlyn again petitioned the Kansas district court for a change in the permanent residency of the children. That petition was granted on February 28, 2003, and the children's residence was transferred to Verlyn in Platte County, Nebraska, where they have lived since the granting of that petition.

Becky appealed from the order of the Kansas district court. In her appeal, Becky challenged the jurisdiction of the court. In a memorandum opinion dated December 5, 2003, the Kansas Court of Appeals concluded that the Kansas district court lacked jurisdiction to grant residential custody to Verlyn. See *In re Marriage of White*, No. 90,429, 2003 WL 22902791 (Kan. App. Dec. 5, 2003) (unpublished disposition listed in table at 79 P.3d 1093). In doing so, it reasoned that as of August 10, 2000, the date Verlyn commenced his initial action in the Kansas district court, "all parties had lived in Nebraska for 11 months prior to the filing of the first motion in August 2000" and that

as a result, "Nebraska was the children's home state in August 2000." *Id.* at *2. It then held that "[w]e vacate the February 28, 2003, order wherein residential custody was changed to Verlyn. Residential custody is in Becky A. White, n/k/a Becky Bedore and the previous orders of the trial court are controlling of custody, support, and visitation." *Id.* at *3.

On December 11, 2003, 6 days following the Kansas Court of Appeals' decision, Verlyn filed a petition to modify and an ex parte application for temporary custody in the district court for Platte County. Verlyn's ex parte application was granted that same day. Shortly thereafter, on or about December 24, Verlyn filed with the Kansas Supreme Court a "Petition for Review" of the Kansas Court of Appeals' decision. That request was ultimately denied by the Kansas Supreme Court on February 10, 2004.

In response to Verlyn's action commenced in the Platte County District Court, Becky filed a motion to dismiss, contending, inter alia, that the Kansas proceedings prevented Nebraska from assuming jurisdiction of Verlyn's action. Becky also filed an application for a writ of assistance, requesting that the sheriff aid her in taking custody of the children pursuant to the Kansas Court of Appeals' decision.

Following a hearing on Verlyn's request for temporary custody, the district court granted Verlyn temporary custody and denied Becky's motion to dismiss and application for a writ of assistance. In denying Becky's motion to dismiss, the district court determined it had subject matter jurisdiction as either the "home state" or the state having the most "significant connection" with the children pursuant to Nebraska's version of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), Neb. Rev. Stat. §§ 43-1226 through 43-1266 (Reissue 2004). On December 14, 2003, a trial was held on Verlyn's amended petition to modify, and he was granted permanent custody. Becky appeals.

## ASSIGNMENTS OF ERROR

On appeal, Becky assigns, renumbered and rephrased, that the Platte County District Court erred in (1) applying Nebraska's version of the UCCJEA rather than the Nebraska Child Custody Jurisdiction Act (NCCJA), Neb. Rev. Stat. §§ 43-1201 through

43-1225 (Reissue 1998); (2) finding that it had subject matter jurisdiction; (3) failing to find that Verlyn's pending appeal in Kansas precluded its exercise of jurisdiction; (4) exercising jurisdiction; (5) considering the children's best interests in determining that it had jurisdiction; and (6) "failing to hold that [its] jurisdiction must be determined as of the date the Petition to Modify is filed."

Becky does not assign as error the district court's finding that "there exists a material change in circumstances such that it would now be in the best interests of the . . . children . . . that their physical custody and primary residence be changed and awarded to . . . Verlyn."

## STANDARD OF REVIEW

When a jurisdictional question does not involve a factual dispute, determination of the issue is a matter of law, which requires an appellate court to reach a conclusion independent from that of the trial court. However, when the determination rests on factual findings, a trial court's decision on the issue will be upheld unless the factual findings concerning jurisdiction are clearly incorrect. *In re Interest of Kelley D. & Heather D.*, 256 Neb. 465, 590 N.W.2d 392 (1999).

The question as to whether jurisdiction existing under the NCCJA should be exercised is entrusted to the discretion of the trial court and is reviewed de novo on the record. As in other matters entrusted to a trial judge's discretion, absent an abuse of discretion, the decision will be upheld on appeal. *In re Interest of Kelley D. & Heather D., supra.*

## ANALYSIS

In her first assignment of error, Becky argues that the district court erred in analyzing whether it had jurisdiction under the UCCJEA rather than under the NCCJA. The resolution of Becky's first assignment of error involves a question of statutory interpretation. Statutory interpretation presents a question of law. When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusions reached by the trial court. *Farber v. Lok-N-Logs, Inc.*, 270 Neb. 356, 701 N.W.2d 368 (2005).

48

■ The petition to modify in this action was filed by Verlyn on December 11, 2003. Pursuant to the UCCJEA, and specifically § 43-1266, "[a] motion or other request for relief made in a child custody proceeding or to enforce a child custody determination which was commenced before January 1, 2004, is governed by the law in effect at the time the motion or other request was made." Absent anything to the contrary, statutory language is to be given its plain and ordinary meaning. *Kimminau v. Uribe Refuse Serv.*, 270 Neb. 682, 707 N.W.2d 229 (2005). The plain language of § 43-1266 states that any motion or request for relief filed prior to January 1, 2004, is to be governed by the "law in effect at the time the motion or other request was made." On December 11, 2003, the date Verlyn filed his petition to modify, the law in effect was the NCCJA. Thus, we determine that the district court erred as a matter of law in applying the UCCJEA rather than the NCCJA. That, however, does not end our analysis.

Having concluded that the trial court erred in applying the UCCJEA, we must next decide whether it is necessary to remand the cause to the district court for further proceedings. In answering this question, we are guided by the principle that when a jurisdictional question does not involve a factual dispute, determination of the issue is a matter of law, which requires an appellate court to reach a conclusion independent from that of the trial court. *In re Interest of Kelley D. & Heather D., supra.*

Initially, we note that neither party argues that remand is required upon a determination that the applicable law is the NCCJA. Furthermore, in their briefs, both parties base their substantive jurisdictional analyses upon the NCCJA. Also, as to any factual findings made by the district court relevant to our analysis, we conclude that such findings are not clearly incorrect. Accordingly, we will proceed to review the jurisdictional issue applying the NCCJA.

### DID DISTRICT COURT HAVE JURISDICTION UNDER NCCJA?

■ In her second assignment of error, Becky argues that the district court did not have jurisdiction over this custody dispute. We will analyze this issue by looking to the NCCJA, which provides in relevant part:

A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination . . . if:

(a) This state (i) is the home state of the child at the time of commencement of the proceeding [or]

(b) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his or her parents, or the child and at least one contestant, have a significant connection with this state and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; [or]

. . . .

(d)(i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with subdivision (a), (b), or (c) of this section, or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction . . . .

§ 43-1203(1). "Home state" is defined as "the state in which the child immediately preceding the time involved lived with his or her parents, a parent, or a person acting as a parent, for at least six consecutive months." § 43-1202(5).

The petition for modification was filed in the Platte County District Court on December 11, 2003. The record establishes that the children have lived with Verlyn in Nebraska since approximately February 28, 2003. Given that the children had lived in Nebraska for more than 6 months when Verlyn filed his petition for modification, it would appear, pursuant to §§ 43-1202(5) and 43-1203(1)(a)(i), that Nebraska was the children's home state.

Despite these statutory provisions, Becky contends that even though the children had lived in Nebraska for more than 9 months as of the date Verlyn filed his motion on December 11, 2003, such residence was the result of an "invalid" order issued by the Kansas district court. Consequently, Becky argues this 9-month time period is not properly includable in the calculation of whether Nebraska has home state jurisdiction.

In support of her argument, Becky cites to *Luna v. Luna*, 592 N.W.2d 557 (N.D. 1997), and *Weller v. Weller*, 960 P.2d 493 (Wyo. 1998). Neither case, however, addresses the precise issue presented. Rather, both cases stand, in relevant part, for the proposition that a court's jurisdiction must exist at the time an action is filed and cannot be attained after such date regardless of the amount of time spent by the children in the state subsequent to the filing of a custody action. Given that no one contends that the 9-month time period during which the children lived with Verlyn in Nebraska and over which home state jurisdiction was based was subsequent to Verlyn's filing, we conclude that both cases are inapplicable.

Becky also directs this court to *In re Marriage of Hamilton*, 120 Wash. App. 147, 84 P.3d 259 (2004), a case decided under Washington's version of the UCCJEA. Becky contends that *In re Marriage of Hamilton* holds that " 'significant contacts' generated without a valid court order may not be used to establish jurisdiction." Brief for appellant at 19. However, a review of *In re Marriage of Hamilton* does not support Becky's contention. To the contrary, the Washington Court of Appeals did consider the child's contacts with Washington in concluding that Washington had jurisdiction, notwithstanding the fact that the mother had moved from Texas to Washington without the father's knowledge. Despite those circumstances, the Washington court held that where a child had no home state, as was true in the situation presented, that child's significant contacts with a state could be considered in determining jurisdiction. We conclude that *In re Marriage of Hamilton* is not supportive of Becky's argument.

We note that we are not faced with a situation like the one presented in *Marriage of Ieronimakis*, 66 Wash. App. 83, 831 P.2d 172 (1992), which was cited and distinguished in *In re Marriage of Hamilton*. In *Marriage of Ieronimakis*, a mother brought her children from Greece, where they had lived with the children's father, to Washington without the father's permission or knowledge. In concluding that it lacked jurisdiction over the children, the court explained:

> To allow Washington courts to assert jurisdiction because [the mother] generated significant contacts with the state is in effect telling any abducting parent that if you

can stay away from the home state long enough to generate new considerations and new evidence, that is a sufficient reason for the new state to assert a right to adjudicate the issue. Such a holding circumvents the intent of the jurisdiction laws.

*Marriage of Ieronimakis*, 66 Wash. App. at 92, 831 P.2d at 177. See, also, *Ortman v. Ortman*, 670 N.E.2d 1317 (Ind. App. 1996) (where mother unilaterally removed children from prior state of residence, allowing change in children's home state would contravene purposes of Indiana's version of NCCJA). See, generally, § 43-1208 (where one party without consent improperly removes child from party with right to custody, court should decline to exercise jurisdiction).

On the record before us, it is undisputed that Verlyn did not abduct the children or otherwise improperly remove them from Becky's custody. On the contrary, Verlyn filed a petition for modification of custody in the Kansas district court. Following a trial, the Kansas court found a material change in circumstances and granted Verlyn custody of the children. It was only after that order was issued that Verlyn obtained custody of the children and moved them to Nebraska. Although the Kansas Court of Appeals later determined that the Kansas court was without jurisdiction to grant custody to Verlyn, that does not change the fact that Verlyn took custody of the children in accordance with what was believed to be a valid court order.

Furthermore, the conclusion that the 9-month period from February to December 11, 2003, is properly considered in determining the children's home state does not, given this record, contravene the general purposes of the NCCJA. Section 43-1201 sets forth the general purposes of the NCCJA. Subsection (e) provides that one such purpose is to "[d]eter abductions and other unilateral removals of children undertaken to obtain custody awards," while subsection (g) provides that the NCCJA should "[f]acilitate the enforcement of custody decrees of other states." Neither of these purposes is inconsistent with the view that Verlyn should be permitted to rely upon the Kansas order in establishing home state jurisdiction. The NCCJA is not concerned with the conduct of a custodial parent acting pursuant to what is believed to be a valid court order, but, rather, with

the unilateral removal of a child from another jurisdiction. Nor would it facilitate the enforcement of custody decrees from other jurisdictions to hold that a party's good faith reliance upon such a decree is of no consequence if it is ultimately determined to have been erroneous.

We conclude that upon this record, the time the children spent in Nebraska pursuant to the Kansas order is properly includable in calculating whether Nebraska had home state jurisdiction. Accordingly, the Platte County District Court had home state jurisdiction over the children.

For the sake of completeness, we note that the district court concluded it possessed subject matter jurisdiction pursuant to the UCCJEA as either the home state or the state having the most "significant connection" with the children. Having determined that the district court acquired home state jurisdiction under the NCCJA, we need not further address its alternative basis of jurisdiction. Becky's second assignment of error is without merit.

### Is Nebraska Precluded From Exercising Jurisdiction?

In her third assignment of error, Becky assigns that pursuant to § 43-1206(1), Verlyn's pending appeal in the Kansas Supreme Court "precluded" Nebraska courts from exercising jurisdiction over this custody matter.

The record indicates that on December 5, 2003, the Kansas Court of Appeals issued its opinion finding that the Kansas district court lacked jurisdiction. On December 11, Verlyn filed his petition for modification in Platte County District Court. Thereafter, on or about December 24, Verlyn filed a petition for review of the Kansas Court of Appeals' decision with the Kansas Supreme Court. That petition was denied by the Kansas Supreme Court on February 10, 2004.

Becky argues that given these undisputed filing dates, at the time Verlyn filed his petition for modification in Nebraska, the time period for filing an appeal from the Kansas Court of Appeals' decision had not expired, as evidenced by Verlyn's December 24, 2003, filing in the Kansas Supreme Court. From this, Becky contends that § 43-1206(1) precluded the Platte County District Court from exercising its jurisdiction because the custody issue had not reached a final determination in Kansas.

The matter was therefore "pending" in Kansas when Verlyn filed his petition for modification in Nebraska. We do not believe § 43-1206(1) supports Becky's argument.

The plain language of § 43-1206(1) provides that "[a] court of this state shall not exercise its jurisdiction under [the NCCJA] if, at the time of filing the petition, a proceeding concerning the custody of the child was pending in a court of another state *exercising jurisdiction substantially in conformity with [the NCCJA].*" (Emphasis supplied.) The undisputed record demonstrates that Kansas was not "exercising jurisdiction" substantially in conformity with the NCCJA at the time Verlyn filed his petition in the Platte County District Court. To the contrary, the decision of the Kansas Court of Appeals, specifically determining that Kansas did not have jurisdiction over this custody proceeding, had been rendered 6 days prior to Verlyn's filing in Nebraska. Assuming without deciding that a "proceeding . . . was pending" in Kansas on the date Verlyn filed his petition for modification in Nebraska, it is undisputed that Kansas had no jurisdiction to exercise under the NCCJA. As such, § 43-1206(1) does not preclude the Platte County District Court's exercise of jurisdiction. See, also, *Swire v. Swire*, 202 N.J. Super. 289, 494 A.2d 1035 (1985) (New Jersey courts could exercise jurisdiction despite mother's pending New York appeal, as New York lacked jurisdiction at time it entered its order). Becky's third assignment of error is without merit.

### SHOULD NEBRASKA EXERCISE JURISDICTION?

In her fourth assignment of error, Becky assigns that even if the district court had jurisdiction under the NCCJA, it should have declined to exercise that jurisdiction. In support of her position, Becky argues that Colorado, rather than Nebraska, was the most convenient forum to hear this dispute and, further, that the district court's exercise of jurisdiction contravened the purposes of the NCCJA as stated in § 43-1201. Because Becky's arguments rely upon specific provisions of §§ 43-1201 and 43-1207 of the NCCJA, we initially set forth the relevant provisions of those sections. Section 43-1207 provides:

(1) A court which has jurisdiction under [the NCCJA] to make an initial or modification decree may decline to

exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.

. . . .

(3) In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:

(a) If another state is or recently was the child's home state;

(b) If another state has a closer connection with the child and his family or with the child and one or more of the contestants;

(c) If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;

(d) If the parties have agreed on another forum which is no less appropriate; and

(e) If the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in section 43-1201.

Section 43-1201 sets forth the purposes behind the NCCJA and provides, in relevant part, that the court should strive to:

(c) Assure that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state;

(d) Discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child;

. . . .

(f) Avoid relitigation of custody decisions of other states in this state when feasible.

Becky and the children moved from Kansas to Nebraska following the entry of the initial divorce decree in April 1999, and then to Colorado in August 2000. As the district court noted, while in Colorado, the children attended several different schools and had several different babysitters. No evidence exists in the record to suggest any ongoing relationships between the children and persons associated with any of these schools or care providers. In fact, with the exception of friendships the children developed in Colorado over their summer visitation, there is no evidence in the record regarding existing relationships between the children and anyone in Colorado, save Becky and her new husband.

Following the decision of the Kansas district court on February 28, 2003, the children moved from Colorado to Nebraska and have resided with Verlyn in Nebraska since that time. As the district court found, the children attend school and church in Nebraska, have friends in Nebraska, and are involved in extracurricular activities in Nebraska. The record also indicates the children receive medical care in Nebraska.

As noted above, in determining whether it should exercise jurisdiction under the NCCJA, a court should consider the factors set forth in § 43-1207(3), as well as the purposes behind the NCCJA as enunciated in § 43-1201. In doing so, we first note that although Colorado was formerly the children's home state, they have not resided in Colorado since February 2003. Moreover, a review of the record shows that the children have closer ties with Nebraska than Colorado and that the bulk of the evidence regarding their "present or future care, protection, training, and personal relationships is more readily available" in Nebraska. See § 43-1207(3).

Furthermore, Nebraska's exercise of jurisdiction would facilitate rather than contravene the purposes behind the NCCJA. In particular, given the children's contacts in Nebraska, Nebraska's exercise of jurisdiction would ensure that litigation takes place in the state with the closest connection to the children and where the most evidence can be found. Nebraska's exercise of jurisdiction would also discourage continuing controversies, promote stability in the lives of these children, and avoid relitigation of a matter which, at a minimum, has been

twice previously heard on its merits. This court has held that the end goal of the NCCJA is that litigation concerning the custody of a child takes place in the state which can best decide the case. *Hamilton v. Foster*, 260 Neb. 887, 620 N.W.2d 103 (2000). We believe Nebraska's exercise of jurisdiction best meets this goal.

Contrary to Becky's assertions, we conclude that upon this record, Nebraska, not Colorado, was the more convenient forum to hear this custody matter and, further, that Nebraska's exercise of jurisdiction did not contravene the purposes of the NCCJA. Accordingly, we determine that the Platte County District Court did not abuse its discretion in exercising jurisdiction. Becky's fourth assignment of error is without merit.

### REMAINING ASSIGNMENTS OF ERROR

In her fifth assignment of error, Becky assigns that the district court "erred in considering the best interests of the children as part of the analysis to determine jurisdiction." In particular, Becky contends that "[t]he district court's order also suggests that the court determined Nebraska had jurisdiction because it believed that the children should remain with their father." Brief for appellant at 23.

An examination of the district court's order does not support Becky's contention. At issue is the district court's order entered on March 17, 2004, following a hearing with respect to both Becky's motion to dismiss and application for a writ of assistance and Verlyn's motion for temporary custody. In response to Becky's motion to dismiss, the district court specifically noted that it had home state jurisdiction over the proceeding, because the children had been present in Nebraska more than 6 months prior to the filing of the petition to modify. As a result, the district court denied Becky's motion and application.

The district court then addressed the issue of Verlyn's motion for temporary custody. In its analysis of that issue, the court concluded that "it would be in the children's best interests that their temporary custody be, and is, awarded to their father, Verlyn." While the court clearly considered the best interests of the children in awarding temporary custody to Verlyn, the court did not consider the children's best interests until after it concluded that it had jurisdiction. Becky's fifth assignment of error is without merit.

In her sixth assignment of error, Becky has assigned the district court's failure "to hold that the court's jurisdiction must be determined as of the date the Petition to Modify is filed." As we understand Becky's argument, she is contending that the district court did not determine its jurisdiction as of December 11, 2003, the date of the filing of Verlyn's petition to modify. In her brief, however, Becky fails to specify the date she believes was improperly utilized by the district court. In any event, it is apparent from the record that the date utilized by the district court when it initially determined that it had jurisdiction was, in fact, December 11. Becky's sixth assignment of error is without merit.

Finally, Becky argues that the Platte County District Court did not, pursuant to § 43-1206, consult with other states before deciding to exercise jurisdiction. However, this argument is not assigned as error in Becky's brief. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *In re Interest of Brian B. et al.*, 268 Neb. 870, 689 N.W.2d 184 (2004). As a result, we need not consider this argument.

## CONCLUSION

We conclude that the district court properly exercised jurisdiction over this custody dispute.

AFFIRMED.