Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/21/2016 09:09 AM CDT

Mark G. Floerchinger, appellee, v.
Stacey Leigh Floerchinger, appellant.
___ N.W.2d ___

Filed June 21, 2016.    No. A-15-833.

1. **Actions: Jurisdiction.** Lack of subject matter jurisdiction may be raised at any time by any party or by the court sua sponte.
2. **Child Custody: Jurisdiction: Appeal and Error.** The question whether jurisdiction should be exercised under the Uniform Child Custody Jurisdiction and Enforcement Act is entrusted to the discretion of the trial court and is reviewed de novo on the record for abuse of discretion by the appellate court.
3. ____: ____: ____. The question as to whether jurisdiction existing under the Nebraska Child Custody Jurisdiction Act should be exercised is entrusted to the discretion of the trial court and is reviewed de novo on the record for abuse of discretion by the appellate court. As in other matters entrusted to a trial judge's discretion, absent an abuse of discretion, the decision will be upheld on appeal.
4. **Child Custody: Appeal and Error.** Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion.
5. **Judgments: Evidence: Appeal and Error.** In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions on the matters at issue. When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.
6. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.

- 121 -

Decisions of the Nebraska Court of Appeals
24 Nebraska Appellate Reports
FLOERCHINGER v. FLOERCHINGER
Cite as 24 Neb. App. 120

7. ____: ____. A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result.

8. **Child Custody: Visitation: Jurisdiction.** A district court has exclusive and continuing jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act over custody and visitation issues if the court made the initial child custody determination in accordance with Neb. Rev. Stat. § 43-1238 (Reissue 2008).

9. **Child Custody: States: Jurisdiction.** In order for a state to exercise jurisdiction over a child custody dispute, that state must be the home state as defined by the Uniform Child Custody Jurisdiction and Enforcement Act or fall under limited exceptions to the home state requirement specified by the act.

10. **Child Custody: Jurisdiction.** Exclusive and continuing jurisdiction remains with the district court under the Uniform Child Custody Jurisdiction and Enforcement Act either until jurisdiction is lost under Neb. Rev. Stat. § 43-1239(a) (Reissue 2008) or until the court declines to exercise jurisdiction under Neb. Rev. Stat. § 43-1244 (Reissue 2008) on the basis of being an inconvenient forum.

11. ____: ____. Jurisdiction is lost under Neb. Rev. Stat. § 43-1239(a) (Reissue 2008) if neither the child nor the child and one parent have a significant connection with Nebraska and substantial evidence pertaining to custody is no longer available in the state, or if a court determines that the child and parents no longer reside in Nebraska.

12. **Child Custody: Evidence: Jurisdiction.** The Uniform Child Custody Jurisdiction and Enforcement Act lists evidence concerning the child's care, protection, training, and personal relationships as relevant evidence regarding custody.

13. **Statutes: Appeal and Error.** In construing a statute, an appellate court will, if possible, try to avoid a construction which would lead to absurd, unconscionable, or unjust results.

14. **Child Custody: Final Orders.** The grant of temporary custody is not a final, appealable order, as it does not affect a substantial right.

15. **Child Custody: Proof.** In a child custody modification case, first, the party seeking modification must show a material change in circumstances, occurring after the entry of the previous custody order and affecting the best interests of the child. Next, the party seeking modification must prove that changing the child's custody is in the child's best interests.

16. **Modification of Decree: Words and Phrases.** A material change in circumstances means the occurrence of something which, had it been

- 122 -

Decisions of the Nebraska Court of Appeals
24 Nebraska Appellate Reports
FLOERCHINGER v. FLOERCHINGER
Cite as 24 Neb. App. 120

known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently.

17. **Child Custody.** While the wishes of a child are not controlling in the determination of custody, if a child is of sufficient age and has expressed an intelligent preference, the child's preference is entitled to consideration.

18. **Child Custody: Appeal and Error.** In contested custody cases, where material issues of fact are in great dispute, the standard of review and the amount of deference granted to the trial judge, who heard and observed the witnesses testify, are often dispositive of whether the trial court's determination is affirmed or reversed on appeal.

Appeal from the District Court for Sarpy County: William B. Zastera, Judge. Affirmed.

Liam K. Meehan, of Schirber & Wagner, L.L.P., for appellant.

Angela M. Minahan, of Reinsch, Slattery, Bear & Minahan, P.C., L.L.O., for appellee.

Moore, Chief Judge, and Inbody and Bishop, Judges.

Moore, Chief Judge.

## I. INTRODUCTION

Stacey Leigh Floerchinger appeals from a modification order entered by the district court for Sarpy County, in which the court found that a material change in circumstances had occurred since the original dissolution of marriage decree and awarded joint legal custody of the parties' minor child to Stacey and her former husband, Mark G. Floerchinger, with "primary possession" of the child awarded to Mark. On appeal, Stacey challenges the court's exercise of jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), the entry of a temporary order, and the modification of custody. Because the district court properly exercised jurisdiction and we find no abuse of discretion in the custody determination, we affirm.

## II. BACKGROUND

### 1. PROCEDURAL BACKGROUND

Mark and Stacey were married in 1993 in the State of Maine and are the biological parents of Brayden Floerchinger (age 15) and his older sister (age 21). The parties moved from Maine to Papillion, Nebraska, soon after their marriage. The parties separated in August 2002, at which time Stacey returned to Maine with Brayden and his sister while Mark remained in Papillion.

On April 28, 2003, Mark filed a "Petition for Dissolution of Marriage" in the district court for Sarpy County, in which Mark alleged, in part, that while both he and Stacey were fit parents, it was in the best interests of the minor children that their custody be awarded to Stacey, subject to Mark's reasonable rights to share time with the minor children.

On September 12, 2003, a "Decree of Dissolution of Marriage" was entered. Pursuant to the parties' agreed-upon parenting plan, the legal custody of the children was awarded to Stacey, subject to Mark's visitation rights set forth in the parenting plan. The decree is silent as to Stacey and the children's place of residence, although the parenting plan references Mark's visitation with the children in Maine. Mark's visitation included a split holiday parenting schedule along with 2 months of summer visitation in Nebraska each year.

Mark maintained his residence in Nebraska from the entry of the decree through the present case, residing in Plattsmouth, Nebraska, at the time of trial. Stacey and the children remained in Maine from August 2002 until the current proceedings. Mark testified that the decree was never registered in Maine although he thought there was an attempt to do so.

On July 17, 2013, Mark filed a complaint to modify just Brayden's custody (Brayden's sister having already reached the age of majority). Mark alleged that a material change in circumstances had occurred, namely that Brayden expressed a desire to reside with Mark in Nebraska. Mark requested that the parties be awarded joint legal custody with primary

possession of Brayden being placed with him. Mark also sought termination of his child support obligation, although he did not seek child support from Stacey.

On August 27 and 29, 2013, Stacey filed objections to the district court's exercise of jurisdiction over the complaint to modify, asserting that pursuant to the UCCJEA, the proper jurisdiction is the State of Maine. In addition, Stacey alleged that Nebraska lacks the requisite minimum contacts to justify the case's being heard in Nebraska.

Mark filed a motion for temporary allowances on August 29, 2013, requesting that the court order that custody of Brayden be placed temporarily with Mark and that it temporarily suspend his child support payments. On September 3, Stacey filed a motion to enforce the decree, seeking the return of Brayden to Maine.

On September 18, 2013, the district court entered a temporary order denying Stacey's motion to enforce the decree and granting Mark's motion. Specifically, the court placed temporary legal custody of Brayden with the court and primary possession with Mark, suspended child support payments, established telephonic visitation between Brayden and Stacey, and granted Stacey visitation with Brayden in Maine for the first half of his upcoming Christmas holiday.

On September 26, 2013, Stacey filed a request for clarification, asking the court to provide the parties with findings regarding the court's denial of Stacey's motion to enforce the decree, for its reasons in granting temporary custody to Mark, and for a ruling on Stacey's objections to the court's exercise of jurisdiction. The court denied this motion.

On January 13, 2014, Stacey's attorney filed a motion to withdraw, which was granted. On March 12, Stacey's new attorney entered his appearance and filed a motion to vacate the temporary order, once again challenging jurisdiction under the UCCJEA and disputing the appropriateness of ordering a temporary custody change on a nonemergency basis. On April 11, the court denied this motion.

## 2. Trial

On May 20, 2014, trial was held. Stacey's counsel preserved the objections to the court's exercise of jurisdiction under the UCCJEA and to the temporary modification of custody.

Both parties testified in their own behalf. Mark also called two witnesses, Mark Smith, the principal of Plattsmouth Middle School, and Brayden. Stacey did not present any witness testimony beyond her own. Mark introduced into evidence Brayden's Plattsmouth Middle School individualized education plan and student Spring progress report for the 2013-14 school year and an affidavit completed by Brayden with attached text message communications between Brayden and Stacey. Stacey introduced the results of a Maine standardized test taken by Brayden, Brayden's Plattsmouth Middle School semester report cards for the 2013-14 school year, and Brayden's report cards from Maine for 2011 through 2013.

### (a) History of Custody
### and Parenting Time

Stacey and the children moved to Maine in August 2002, prior to the initiation of the divorce. Brayden and Stacey have resided in Maine since that time. Mark has continuously resided in Nebraska, and he was living in Plattsmouth at the time of trial. Mark has always exercised his 2 months of summer parenting time as awarded by the divorce decree. Mark has exercised his winter or Christmas holiday visitation on some years, but not every year. Stacey testified that Mark exercised winter or Christmas visitation only three or four times during the 11-year period. Mark testified that he was occasionally limited in his ability to exercise winter visitation due to travel costs and his work schedule. Mark has maintained regular contact with Brayden through telephone calls and text messages; has called Brayden on holidays, birthdays, and special occasions; and has sent Brayden presents.

### (b) Brayden's Desire to
### Live With Mark

Mark does not challenge Stacey's fitness as a parent. Rather, he maintains that Brayden's desire to reside with Mark supports the modification of custody and that granting such modification is in Brayden's best interests.

Mark testified that Brayden began expressing his desire to live with Mark permanently in Nebraska during the summer of 2012. Mark had responded that the matter would need to be discussed with Stacey. Mark contacted Stacey, and they discussed Brayden's desire to move. Mark claims that this upset Stacey and that she responded by requesting that Brayden return to Maine following the summer 2012 visitation for 1 more year after which Brayden could live with Mark in Nebraska. When Brayden returned to Mark's home for the summer 2013 visitation, Brayden continued to express to Mark a desire to reside with him. Mark testified that Brayden told him that he felt more comfortable in Nebraska and enjoyed living with Mark.

Mark responded by filing the modification complaint. After the complaint was filed, conversations between Mark and Stacey regarding a change in Brayden's residence continued, resulting in Mark's belief that the parties had reached an agreement. Specifically, Mark claimed that during a telephone call in July or August 2013, Stacey gave consent for Brayden to move to Nebraska. Mark similarly testified that Stacey cooperated in providing Brayden's medical records necessary to enroll him in school in Nebraska. Nevertheless, Stacey refused to sign a stipulation which would have modified the divorce decree and given Mark custody.

Mark introduced Brayden's affidavit into evidence along with an attached text message conversation between Brayden and Stacey. Brayden expressed in the affidavit his longstanding and continuous desire to reside with Mark and claimed that Stacey had agreed to this arrangement. The text messages attached to the affidavit included a message from Stacey

- 127 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
24 NEBRASKA APPELLATE REPORTS
FLOERCHINGER v. FLOERCHINGER
Cite as 24 Neb. App. 120

wishing Brayden a great first day at school and later another asking how his first day went.

Brayden testified at trial regarding his desire to reside with Mark in Nebraska. Brayden stated that during the summer of 2012, he had asked to live with Mark and Stacey had agreed, during a telephone conversation, to allow a change in residency under the condition that Brayden reside with her in Maine for 1 more year. In July 2013, Brayden again told Mark that he wanted to live with him, but he did not speak to Stacey about it at this time. Brayden did discuss the matter with Stacey after she was served with the modification complaint, expressing his desire to live in Nebraska.

Brayden testified that he preferred living in Nebraska due to the comfortable and relaxed environment at Mark's house and because he enjoyed the interaction he had with Mark. Brayden also expressed that his living situation in Nebraska was better because in Maine, he was pestered by his stepsiblings. Brayden stated that his home in Maine is a "single wide" trailer being shared by his biological sister, Stacey, a stepfather (Stacey's fiance), and the stepfather's two young daughters.

Stacey admitted Mark called her in August 2012 and told her that Brayden wanted to live in Nebraska and that Stacey should let him move. Stacey responded by saying no and that Brayden needed to come back to Maine. Stacey questioned Brayden about where he wanted to live. She testified that at no point during the 2012-13 school year while Brayden was residing with her in Maine did he express a desire to live with Mark. Brayden told her that Mark was making him feel guilty, that he felt bad for Mark, and that he did not really want to live in Nebraska. Stacey also testified that Brayden had expressed a desire to move back to Maine, even in the summer of 2013, and that he tended to want to stay wherever he was currently located. After Stacey was served with the modification papers in late July 2013, she tried to call Brayden but had difficulty reaching him despite trying from several different telephones. She received a call from Brayden the following day wherein

- 128 -

Decisions of the Nebraska Court of Appeals
24 Nebraska Appellate Reports
FLOERCHINGER v. FLOERCHINGER
Cite as 24 Neb. App. 120

he expressed a desire to live in Nebraska. Stacey claims that Brayden did not give a clear reason why he wanted to live in Nebraska, other than that he just wanted to try it. Mark then joined in on the telephone call, stating that Brayden wanted to live in Nebraska and that Stacey should let him. Stacey became upset and cried, telling Mark that she was going to seek an attorney. Mark allegedly responded by stating that because Brayden was 12 years old, he gets to decide where to live. Stacey stated that Mark enrolled Brayden in school in Plattsmouth without her consent. Stacey denied sending any medical records or other information necessary for Brayden's enrollment and stated she had believed Brayden would return to her when she wished him luck on the first day of school.

### (c) Brayden's Current Situation

Mark testified that Brayden has adapted well to Plattsmouth. Brayden is involved in extracurricular activities in Plattsmouth, including sports; has developed a network of friends in the community; and is relaxed and comfortable in Mark's home. During cross-examination, Mark admitted that Brayden enjoyed some similar benefits in Maine. Overall, Mark claims that Brayden has adjusted well to his new home in Nebraska and has shown signs of academic progress, success, and increased maturity.

During the school enrollment process, Mark discovered that Brayden suffered from learning disabilities, struggling in particular with the subjects of reading, math, and science. He further claims that Brayden was in extreme need of special education assistance. Upon Brayden's enrollment at Plattsmouth Middle School, it was determined that his academic ability was below average for his age based on school records obtained from Brayden's school in Maine along with new test results gathered by the Plattsmouth school system. Mark also learned during a school meeting that Brayden had been diagnosed with attention deficit hyperactivity disorder while in Maine.

- 129 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
24 NEBRASKA APPELLATE REPORTS
FLOERCHINGER v. FLOERCHINGER
Cite as 24 Neb. App. 120

Smith, the principal of Plattsmouth Middle School, provided additional testimony regarding Brayden's academic performance at that middle school. Smith testified that when Brayden was enrolled there, he was reading below grade level. In response, Brayden was enrolled in a specialized reading course. An individualized education plan was also created for Brayden. The reading course resulted in an improvement in Brayden's reading level scores. Smith also testified that Brayden's academic performance was slightly deficient in the subjects of language arts, math, and science. Brayden was enrolled in a study hall and provided with a resource teacher to improve his academic performance. Smith claims that since Brayden's enrollment at the school, he has made great educational progress as documented through his test results.

Since the discovery of Brayden's academic deficiencies, Mark has worked with Brayden, assisting him with homework, and they read together every night. Brayden's testimony confirmed that Mark assists him with homework and reading. Mark attends all parent-teacher conferences and individualized education plan meetings on behalf of Brayden. Mark feels that Brayden has been successful at school since moving to Plattsmouth.

On cross-examination, Smith admitted that Brayden's academic improvements could have possibly occurred at any school rather than as a result of a unique benefit provided by Plattsmouth Middle School. However, Smith stated that Brayden's growth may be attributable to the excellent teachers, support staff, and specialized reading course available at Plattsmouth Middle School. Smith observed that Brayden also had above-typical academic growth while attending school in Maine. Brayden's seventh grade report card showed that he received five C's and one D while enrolled in Plattsmouth, whereas he received only two grades that were in the C range while enrolled in the fifth and sixth grades in Maine. However, due to the lack of a grading scale on the Maine report cards and the possibility that Maine uses a different

- 130 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
24 NEBRASKA APPELLATE REPORTS
FLOERCHINGER v. FLOERCHINGER
Cite as 24 Neb. App. 120

approach to scoring, Smith was unable to reliably compare grades between the two schools, which is in part why he focused more on standardized scores than individual grades in assessing growth.

Stacey also testified regarding Brayden's grades, claiming that the academic growth Brayden experienced during the school year in Nebraska was similar to that which occurred while he was in Maine. Stacey expressed her concerns regarding Brayden's five C's and one D since enrolling at Plattsmouth Middle School.

Brayden testified that he learns more at his new school, that he has "made way more friends" in Nebraska, that there is no fighting and arguing at Mark's house such as occurs at Stacey's house between Stacey and Brayden's stepfather, and that overall, Mark's house is a better place to live. Brayden testified that the town Stacey resides in is substantially similar in size to Plattsmouth.

As instructed under the temporary order, Stacey was granted visitation with Brayden in Maine during the first half of his Christmas holiday in 2013. During this visit, Stacey attempted to discuss with Brayden why he wanted to reside in Nebraska. She admitted to becoming frustrated with Brayden and expressed that she did not understand why he wanted to move. Brayden claimed that Stacey became angry with him while discussing why he wanted to move to Nebraska, shouting and swearing at him during the ride from the airport. He stated that later that evening, Stacey hugged him and apologized.

Brayden also testified about an altercation between Stacey and his stepfather during the holiday visit in which his stepfather shoved Stacey. Brayden claims that Stacey told him to call the police, but that he chose not to at the request of his stepfather. This quarrel caused Brayden to feel sad, unsafe, and scared. Brayden testified that the remainder of his visit was "mostly good." Stacey admitted that an argument occurred between her and Brayden's stepfather in the presence of

Brayden. However, Stacey denied that this altercation became physical, denied requesting that Brayden call the police, and clarified that it was purely a verbal altercation.

At the close of evidence, the court found that there existed a material change in circumstances based on Brayden's articulation of a reason for moving in with Mark. As a result, the court awarded "primary possession" to Mark subject to Stacey's parenting time, along with granting joint legal custody to both parties. The court also ordered that neither party was to pay child support. On August 10, 2015, the court memorialized its holding in a modification order.

Stacey subsequently perfected this appeal.

### III. ASSIGNMENTS OF ERROR

Stacey assigns, restated, that the district court (1) erred in finding that Nebraska had continuing jurisdiction under the UCCJEA; (2) abused its discretion in granting Mark temporary custody prior to a full evidentiary hearing, which grant was prejudicial to Stacey; and (3) erred in finding that a material change in circumstances occurred justifying a transfer of custody.

### IV. STANDARD OF REVIEW

[1-3] Lack of subject matter jurisdiction may be raised at any time by any party or by the court sua sponte. *In re Guardianship & Conservatorship of Barnhart*, 290 Neb. 314, 859 N.W.2d 856 (2015). The question whether jurisdiction should be exercised under the UCCJEA is entrusted to the discretion of the trial court and is reviewed de novo on the record for abuse of discretion by the appellate court. *Watson v. Watson*, 272 Neb. 647, 724 N.W.2d 24 (2006). See, also, *Mahmood v. Mahmud*, 279 Neb. 390, 778 N.W.2d 426 (2010) (subject matter jurisdiction is question of law for court, which requires appellate court to reach conclusion independent of lower court's decision). The same standard of review applies to jurisdiction existing under the previously operative Nebraska Child Custody Jurisdiction Act (NCCJA). *White v.*

- 132 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
24 NEBRASKA APPELLATE REPORTS
FLOERCHINGER v. FLOERCHINGER
Cite as 24 Neb. App. 120

*White*, 271 Neb. 43, 709 N.W.2d 325 (2006). As in other matters entrusted to a trial judge's jurisdiction, absent an abuse of discretion, the decision will be upheld on appeal. *Id.*

[4] Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *State on behalf of Jakai C. v. Tiffany M.*, 292 Neb. 68, 871 N.W.2d 230 (2015). See, also, *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015).

[5] In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions on the matters at issue. When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Freeman v. Groskopf*, 286 Neb. 713, 838 N.W.2d 300 (2013).

[6,7] An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Schrag v. Spear, supra*. A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result. *Id*.

## V. ANALYSIS

### 1. JURISDICTION

The district court, both in its initial exercise of jurisdiction over Brayden's custody in the decree of dissolution and in its continuing exercise of jurisdiction in the modification order, claimed "jurisdiction over the parties and the subject matter of this action."

Stacey argues that the district court erred in finding that Nebraska could exercise continuing jurisdiction over Brayden's custody. Stacey first challenges the exercise of continuing

- 133 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
24 NEBRASKA APPELLATE REPORTS
FLOERCHINGER v. FLOERCHINGER
Cite as 24 Neb. App. 120

jurisdiction based upon her argument that the court's exercise of initial jurisdiction at the time of the decree was erroneous. Next, she challenges the district court's exercise of continuing jurisdiction based upon her assertion that Maine was the home state of Brayden for 11 years and within the 6 months prior to the modification filing.

### (a) Initial Child Custody Jurisdiction Under NCCJA

Jurisdiction over child custody proceedings is currently governed by the UCCJEA. *Watson v. Watson*, 272 Neb. 647, 724 N.W.2d 24 (2006). The UCCJEA became operative on January 1, 2004, and establishes that all motions made in a child custody proceeding commenced prior to that date are governed by the prior law in effect at that time. Neb. Rev. Stat. § 43-1266 (Reissue 2008). The law governing child custody jurisdiction prior to the effective date of the UCCJEA was the NCCJA. Neb. Rev. Stat. §§ 43-1201 to 43-1225 (Reissue 1998).

Mark filed the petition for dissolution of marriage on April 28, 2003. The court subsequently issued the dissolution decree, which approved the parties' agreed-upon initial custody arrangement, on September 12. Thus, the jurisdiction of the court over the initial custody determination was governed by the NCCJA and not the UCCJEA.

The NCCJA provided that a Nebraska court had jurisdiction to make an initial child custody determination if Nebraska was "the home state of the child at the time of commencement of the proceedings" or

> had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his or her removal or retention by a person claiming his or her custody or for other reasons, and a parent or person acting as parent continues to live in this state.

§ 43-1203(1)(a). The NCCJA defined "home state" as the "state in which the child immediately preceding the time involved

- 134 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
24 NEBRASKA APPELLATE REPORTS
FLOERCHINGER v. FLOERCHINGER
Cite as 24 Neb. App. 120

lived with his or her parents, a parent, or a person acting as parent, for at least six consecutive months." § 43-1202(5). These "home state" provisions are substantially similar to the UCCJEA.

However, the NCCJA provided another means for a Nebraska court to exercise jurisdiction if Nebraska was not the home state, an alternative eliminated from the UCCJEA. Specifically, the NCCJA provided that a Nebraska court may nonetheless exercise jurisdiction if "[i]t is in the best interest of the child" because the child and his or her parents "have a significant connection with this state" and "there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships." § 43-1203(1)(b). See, also, *In re Interest of Kelley D. & Heather D.*, 256 Neb. 465, 590 N.W.2d 392 (1999) (paramount consideration in determining whether state is convenient forum under NCCJA is determination of what court is most able to act in best interests of child); *State ex rel. Grape v. Zach*, 247 Neb. 29, 524 N.W.2d 788 (1994) (home state under NCCJA may be overcome by circumstances of particular case). The end goal of the NCCJA is that litigation concerning the custody of a child takes place in the state which can best decide the case. *White v. White*, 271 Neb. 43, 709 N.W.2d 325 (2006).

Brayden resided with Stacey in Maine for approximately 8 months preceding Mark's dissolution petition. Consequently, Nebraska was not the child's "home state" for purposes of the NCCJA. However, that does not necessarily end the analysis; the remaining question is whether the best interests of Brayden were served by the district court's exercising jurisdiction over the initial custody determination because of a significant connection with this state and the availability of substantial evidence in this state. Based upon our review of the record, we conclude that the district court properly exercised initial jurisdiction over the custody determination under this analysis.

- 135 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
24 NEBRASKA APPELLATE REPORTS
FLOERCHINGER v. FLOERCHINGER
Cite as 24 Neb. App. 120

The issue of the district court's exercise of initial jurisdiction is complicated, in part due to the fact that neither party challenged the court's exercise of jurisdiction, and thus, the district court did not make any findings regarding its reasons for accepting jurisdiction. Rather, both parties voluntarily appeared before the court and presented an agreement for the court's approval on all matters relating to the dissolution of their marriage, including custody and a parenting plan.

We acknowledge that subject matter jurisdiction can be challenged at any point and cannot be waived through consent. However, we consider Stacey's approval of the dissolution decree as evidence that the district court's exercise of initial jurisdiction was in the best interests of Brayden. Specifically, by exercising jurisdiction and approving the parties' agreement, the court promoted the best interests of the child through facilitating the reasonable custody and visitation arrangement desired by both parents.

Further, Brayden and both parties had a significant connection with Nebraska. Brayden was born in Nebraska and resided in Nebraska for almost 2 years prior to his removal to Maine. The parties had lived together in Nebraska for at least 5 years prior to separation, and Mark continued to reside in the state. Stacey had been away from Nebraska for only 8 months when Mark filed for divorce. Although no contested trial took place, due to the parties' agreement, there would have existed substantial evidence in Nebraska concerning Brayden's care.

The Nebraska Supreme Court, in *State ex rel. Grape v. Zach*, 247 Neb. 29, 524 N.W.2d 788 (1994), found similar circumstances to support the exercise of jurisdiction in Nebraska over a child custody proceeding under the NCCJA. In *Zach*, the child was born in Nebraska and lived in Nebraska for 3 years prior to removal by the mother, the mother sought a custody determination from a Nebraska district court, and the child's father resided in Nebraska. The court found that the child and father both had a significant connection with Nebraska. *Id.*

- 136 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
24 NEBRASKA APPELLATE REPORTS
FLOERCHINGER v. FLOERCHINGER
Cite as 24 Neb. App. 120

Here, the same considerations apply in determining that the initial exercise of jurisdiction was appropriate, namely that Brayden was born and lived in Nebraska for a period of time, Mark continued to reside in Nebraska, and they both had a significant connection with Nebraska.

Given the parties' agreement regarding custody and parenting matters, it was appropriate for the district court to accept and exercise jurisdiction at the time of the entry of the decree. For the district court to decline to exercise jurisdiction at that time would have needlessly delayed the marital dissolution and resolution of custody and visitation matters, against the best interests of Brayden.

Given our determination that the district court properly exercised jurisdiction over the initial custody determination, we next consider whether the court correctly exercised continuing jurisdiction over the modification complaint in accordance with the UCCJEA.

### (b) Continuing Jurisdiction Under UCCJEA

[8,9] A district court has exclusive and continuing jurisdiction under the UCCJEA over custody and visitation issues if the court made the initial child custody determination in accordance with Neb. Rev. Stat. § 43-1238 (Reissue 2008). Neb. Rev. Stat. § 43-1239(a) (Reissue 2008). As established by § 43-1238 of the UCCJEA, in order for a state to have exercised initial jurisdiction over a child custody dispute, that state must have been the child's home state or fall under limited exceptions to the home state requirement specified by the act. See *Carter v. Carter*, 276 Neb. 840, 758 N.W.2d 1 (2008). Unlike the NCCJA discussed above, the UCCJEA does not contain the alternative analysis allowing jurisdiction to be established in Nebraska when it is not the child's home state but when it is in the best interests of the child to exercise jurisdiction.

[10-12] Exclusive and continuing jurisdiction remains with the district court under the UCCJEA either until jurisdiction is lost under § 43-1239(a) or until the court declines to exercise jurisdiction under Neb. Rev. Stat. § 43-1244 (Reissue 2008) on the basis of being an inconvenient forum. See *Watson v. Watson*, 272 Neb. 647, 653, 724 N.W.2d 24, 29 (2006). In *Watson*, both parents and the child resided in Nebraska at the time the decree was entered, the mother subsequently was granted permission to move the child to Maryland, and the Supreme Court held that continuing jurisdiction remained in Nebraska unless it was lost or the court declined to exercise it. Jurisdiction is lost under § 43-1239(a) if neither the child nor the child and one parent have a significant connection with Nebraska and substantial evidence pertaining to custody is no longer available in the state, or if a court determines that the child and parents no longer reside in Nebraska. § 43-1239(a)(1). The UCCJEA lists evidence concerning the child's care, protection, training, and personal relationships as relevant evidence regarding custody. § 43-1239(a)(1).

[13] Stacey's primary argument is that the district court did not have continuing jurisdiction over this case because it did not make the initial child custody determination in accordance with the UCCJEA. While Stacey's argument is technically correct, its application to the facts of this case would lead to an absurd and unjust result. This is so because the UCCJEA was not in existence at the time the initial custody determination was made. We agree with Stacey that under the "home state" provisions of the UCCJEA, § 43-1238(a), Nebraska did not have jurisdiction at the time of the initial custody determination. However, as we have determined above, Nebraska did properly exercise jurisdiction under the provisions of the NCCJA in existence at that time. Thus, we conclude that the court properly applied continuing jurisdiction over the custody of Brayden under § 43-1239(a). See *Chase 3000, Inc. v. Nebraska Pub. Serv. Comm.*, 273 Neb. 133, 728 N.W.2d 560 (2007) (construing statute, appellate court will try if

possible to avoid construction which would lead to absurd, unconscionable, or unjust results), *superseded by statute on other grounds* as stated in *Telrite Corp. v. Nebraska Pub. Serv. Comm.*, 288 Neb. 866, 852 N.W.2d 910 (2014).

Further, the district court's jurisdiction was not lost under § 43-1239(a) of the UCCJEA. Continuing jurisdiction was proper because Brayden had a significant connection with Nebraska through his annual summer visitation; substantial evidence was available in Nebraska regarding his "care, protection, training, and personal relationships," § 43-1239(a)(1); and Mark continued to reside in Nebraska from the time of the dissolution through the proceedings at issue. See, also, *Watson v. Watson, supra*, quoting *Grahm v. Superior Court*, 132 Cal. App. 4th 1193, 34 Cal. Rptr. 3d 270 (2005) (as long as parent remains in state of original custody determination, only that state may determine when relationship between child and remaining parent has deteriorated to point that jurisdiction is lost, and if remaining parent continues to exercise visitation rights, this relationship is strong enough to oppose termination of jurisdiction).

Jurisdiction remains in Nebraska so long as the requirements of § 43-1239(a) are met, as they were in this case. See *Watson v. Watson*, 272 Neb. 647, 724 N.W.2d 24 (2006). The district court's exercise of initial jurisdiction under the NCCJA was not in error, and the court properly exercised continuing jurisdiction over the custody modification at issue pursuant to the UCCJEA.

Stacey's first assignment of error is without merit.

## 2. TEMPORARY CUSTODY ORDER

Stacey alleges that the district court abused its discretion in granting temporary custody to Mark and allowing Brayden to remain in Nebraska prior to a full evidentiary hearing.

[14] The grant of temporary custody is not a final, appealable order, as it does not affect a substantial right. See *Carmicheal v. Rollins*, 280 Neb. 59, 783 N.W.2d 763 (2010). See, also,

*Fitzgerald v. Fitzgerald*, 286 Neb. 96, 835 N.W.2d 44 (2013) (ordinarily, order modifying dissolution decree to grant permanent change of child custody would be final and appealable as order affecting substantial right made during special proceeding).

Stacey relies on the Nebraska Supreme Court's holding in *Jack v. Clinton*, 259 Neb. 198, 609 N.W.2d 328 (2000), in support of her claim that the temporary custody order was inappropriate. *Jack* was a removal case in which the Supreme Court discouraged trial courts from granting temporary orders allowing removal of children to another jurisdiction prior to ruling on permanent removal. Instead, the Supreme Court encouraged the prompt conducting of a full hearing on permanent removal. *Id.* We find no merit to Stacey's argument based upon *Jack*. First, this is not a removal case; rather, it is a custody modification case in which the trial court had authority to enter a temporary order pending trial. Second, even if the proposition in *Jack* were applicable to this case, the Supreme Court in *Jack* did not determine that the temporary order of removal was appealable; rather, it simply discouraged the practice.

Because the temporary order herein was itself not a final, appealable order and was effectively adopted by the final order, we focus in the following section on whether the final order modifying custody was an abuse of discretion.

Stacey's second assignment of error is without merit.

### 3. MATERIAL CHANGE
### IN CIRCUMSTANCES

Stacey asserts that the district court erred in finding that a material change in circumstances existed to modify custody and that the modification was in Brayden's best interests. She argues that the court abused its discretion in finding Brayden had articulated a sufficient reason to relocate, that her 11 years of sole parenting were not given adequate deference, and that she had a healthy and good relationship with Brayden

- 140 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
24 NEBRASKA APPELLATE REPORTS
FLOERCHINGER v. FLOERCHINGER
Cite as 24 Neb. App. 120

before the complaint was filed in 2013. She also alleges there was little to no evidence that a change in custody would benefit the general health and social behavior of Brayden.

[15,16] In a child custody modification case, first, the party seeking modification must show a material change in circumstances, occurring after the entry of the previous custody order and affecting the best interests of the child. Next, the party seeking modification must prove that changing the child's custody is in the child's best interests. *State on behalf of Jakai C. v. Tiffany M.*, 292 Neb. 68, 871 N.W.2d 230 (2015). See, also, *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015) (party seeking modification of child custody bears burden); *McDonald v. McDonald*, 21 Neb. App. 535, 840 N.W.2d 573 (2013) (ordinarily, custody of minor child will not be modified unless there has been material change in circumstances showing custodial parent is unfit or best interests of child require such action). A material change in circumstances means the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently. *Schrag v. Spear, supra*.

[17] Neb. Rev. Stat. § 43-2923 (Cum. Supp. 2014) of Nebraska's Parenting Act sets forth a nonexhaustive list of factors to be considered in determining the best interests of a child in regard to custody. Such factors include the relationship of the minor child with each parent, the desires of the minor child, the general health and well-being of the minor child, and credible evidence of abuse inflicted on the child by any family or household member. Specifically regarding the desires of a minor child, the statute provides that the court should consider "[t]he desires and wishes of the minor child, if of an age of comprehension but regardless of chronological age, when such desires and wishes are based on sound reasoning." § 43-2923(6)(b). The Nebraska Supreme Court in applying this provision has stated that while the wishes of a child are not controlling in the determination of custody, if

- 141 -

Decisions of the Nebraska Court of Appeals
24 Nebraska Appellate Reports
FLOERCHINGER v. FLOERCHINGER
Cite as 24 Neb. App. 120

a child is of sufficient age and has expressed an intelligent preference, the child's preference is entitled to consideration. *Vogel v. Vogel*, 262 Neb. 1030, 637 N.W.2d 611 (2002). See, also, *Adams v. Adams*, 13 Neb. App. 276, 691 N.W.2d 541 (2005). The Supreme Court has also found that in cases where the minor child's preference was given significant consideration, the child was usually over 10 years of age. *Vogel v. Vogel, supra*.

The district court found that a material change in circumstances had occurred subsequently to the decree which justified modification of custody and that such a modification is in the best interests of Brayden. The court specifically focused on Brayden's desire to reside with Mark in Nebraska, concluding that Brayden was articulate and that his decision was based on sound reasoning.

Based upon our de novo review, we find no abuse of discretion in the district court's finding of a material change in circumstances that justified granting Mark physical custody of Brayden and its finding that such a modification was in Brayden's best interests.

[18] Mark and Stacey presented conflicting testimony regarding whether a change in custody would be in Brayden's best interests, including whether Brayden actually desired to change his permanent residence to Nebraska and whether his reasons were sound. Conflicting testimony was also provided regarding the academic and social benefits available to Brayden in Nebraska and Maine, respectively. In contested custody cases, where material issues of fact are in great dispute, the standard of review and the amount of deference granted to the trial judge, who heard and observed the witnesses testify, are often dispositive of whether the trial court's determination is affirmed or reversed on appeal. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015). The trial court in this case had an opportunity to observe the testimony of both parties, as well as the testimony of Brayden. The court found that Brayden, through his trial testimony, expressed a clear

- 142 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
24 NEBRASKA APPELLATE REPORTS
FLOERCHINGER v. FLOERCHINGER
Cite as 24 Neb. App. 120

and intelligent desire to reside with Mark; accordingly, his preference was entitled to consideration.

Upon our review, we can find no abuse of discretion in the district court's consideration of Brayden's articulated reasons for wanting to live with Mark. Brayden was of sufficient age (13 at the time of trial) and expressed an intelligent custody preference based on sound reasoning. Brayden, in his own words, testified to preferring life in Nebraska due to the comfortable and relaxed environment at Mark's house, as opposed to the home in Maine which he shared with five other people and where he was exposed to fighting and arguing between Stacey and his stepfather. He also expressed the satisfaction he receives from interacting with Mark on a regular basis. Additionally, Brayden feels that he learns more at Plattsmouth Middle School and has "made way more friends" in Nebraska. Brayden desires to reside with Mark because he believes it is "a better place" to live.

Most importantly, the record shows that Brayden's desire to live with Mark was not a hasty decision, but, rather, was thoughtfully developed over a period of a couple years. Brayden understood that this change would be permanent. Because Brayden is of an age of comprehension and clearly expressed his desire to reside with Mark, having formed an intelligent preference based on sound reasoning, we give Brayden's preference significant consideration in our de novo review.

While the desire of Brayden to move to Nebraska formed the primary basis for the custody modification, the court also had an opportunity to consider other factors. These included Brayden's academic performance, extracurricular activities, friends, living environment, and general quality of life in both Nebraska and Maine. The record indicates that Brayden has been thriving both socially and academically in Nebraska, although he may have enjoyed similar benefits in Maine. The court also was in a position to consider that Stacey had been the primary caregiver for Brayden for 11 years, along with the

- 143 -

Decisions of the Nebraska Court of Appeals
24 Nebraska Appellate Reports
FLOERCHINGER v. FLOERCHINGER
Cite as 24 Neb. App. 120

generally positive relationship between Brayden and Stacey prior to the filing of the modification complaint. On the other hand, Brayden has a very positive relationship with Mark and has been thriving in his custody.

Upon our de novo review, we conclude that the district court did not abuse its discretion in finding that a material change in circumstances existed and that Brayden's best interests would be served through a custody modification.

Stacey's final assignment of error is without merit.

## VI. CONCLUSION

Upon our de novo review, we conclude that the district court did not abuse its discretion in exercising jurisdiction over the complaint to modify, granting Mark temporary custody of Brayden, and finding a material change in circumstances affecting the best interests of Brayden, justifying a custody modification. We therefore affirm.

Affirmed.